# Charlestown.

PHARES, EX'R, v. SAUNDERS'S ADM'R et al.

Decided August 26, 1881.

1. Where in a petition for a writ of error it is alleged, that since the judgment was rendered, the defendant has died, and that petitioner has been appointed administrator of the personal estate of said defendant, such allegations could in the Appellate Court be controverted, and if not controverted, they must be taken as true.

2. It is a general rule, that no person can bring a writ of error, who is not a party or privy to the record; but the right to bring the writ of error in case of the death of the party, against whom the judgment was rendered, will be in the personal representative without a revival of the judgment, because the personal representative stands in the shoes of the deceased, and has the same rights, as his intestate had, with reference to the judgment.

3. Where special pleas are copied by the clerk and certified as being filed in the papers and endorsed as filed by the clerk, and no order was entered by the court filing them, they are no part of the record.

4. Where the record shows, that a plea was filed before the declaration, and no special pleas in writing were filed, yet instructions were given to the jury on the assumption, that such special pleas were filed, and the certified evidence in the case shows, it was taken with reference to special pleas, in such a confused state of the record the Appellate Court will reverse the judgment, set aside the verdict and grant a new trial

Writ of error to a judgment of the circuit court of the county of Pendleton rendered on the 21st day of April, 1870, in an action in said court then pending, wherein Sylvanus Phares, ex'r of Solomon Phares, deceased, was plaintiff, and Edward T. Saunders' adm'r and Samuel C. Eagle were defendants, allowed upon the petition of said administrator.

Hon. J. T. Hoke, late judge of the fourth judicial circuit, rendered the judgment complained of.

JOHNSON, PRESIDENT, furnishes the following statement of the case :

This is an action of debt brought in 1868 by Sylvanus Phares, executor of Solomon Phares, in the circuit court of Pendleton county upon the following bond :

"Six months after date we promise to pay to Solomon

Phares or order the sum of $710.00 for cattle, to which payment we bind ourselves, our heirs, &c.

"Witness our hands and seals August the 26th, 1862.

"E. T. Saunders, [Seal.]
"Samuel C. Eagle. [Seal.]"

A declaration in the usual form in debt was filed at July rules, 1868. The summons as to Saunders was returned "executed," and as to Eagle "not found." Upon affidavit filed an order of publication was issued as to Eagle, the object of the suit being stated, "to attach the estate of Samuel C. Eagle," &c. The said order was duly published. Whether any attachment was really issued does not appear. The summons as to Saunders was served on the 22d day of May, 1868, and the declaration was filed at July rules, 1868. On the 5th day of June, 1868, it appears by the omitted part of the record brought up by *certiorari* an order was entered reciting, that "this day came the plaintiff by his attorney and as well the defendant, Saunders, by his attorney, and the defendant moved to remand this case to rules, which motion was overruled;" and thereupon the defendant pleaded payment, and issue was thereon joined, and "on motion of the defendant leave is given him to file special pleas in sixty days, and this case is continued until next term." No order was entered filing any special pleas, but the clerk in his return to the writ of *certiorari* copies two special pleas; the *first*, that the bond sued upon was to be paid in Confederate States treasury notes, an illegal currency issued by the so-called Confederate States of America for the purpose of upholding the armed rebellion then carried on by the said Confederate States against the United States, and that said bond was to be paid off and discharged in said illegal currency, an illegal paper-circulation contrary to the public policy of the government of the United States, of restored Virginia and of West Virginia, and therefore illegal and void; the *second*, that the consideration of said bond was for —— head of cattle sold and delivered on the 26th day of August, 1862, by the plaintiff's testator for the purpose of upholding the armed rebellion then carried on by the so-called Confederate States of America against the United States of America, and for no other consideration, &c. The clerk certifies, that an endorsement was made on these pleas

in the handwriting of the attorney for the plaintiff, "issue join-
ed on these pleas," and the pleas are endorsed on the back there-
of in the handwriting of the clerk, "filed April term, 1870,"
but there is no order of the court filing the same, or showing
that issue was taken thereon.

On the 19th of April, 1870, this order was entered: "This
day came the parties by their attorneys, and thereupon came a
jury to wit, * * * * who being elected, tried and sworn the
truth to speak on the issue joined, and having fully heard the
evidence and argument of counsel were adjourned," &c.

On the 20th day of April, 1870, the following order was
entered, stating the case in the name of the plaintiff against
both defendants: "This day came again the parties by their
attorneys, and the jury sworn in this case on yesterday met
pursuant to their adjournment and having considered of their
verdict upon their oaths do say: 'We the jury find for the
plaintiff the debt in the declaration mentioned and interest
thereon, which aggregate of principal and interest we find to
be $1,014.58.'"

On the 21st day of April, 1870, stating the case in the same
manner, the following order was entered: "The defendants
by their attorneys this day moved the court to set aside the
verdict in this case and grant them a new trial, upon the
ground that the verdict rendered by the jury was contrary
to law and evidence, which motion was overruled.   And
thereupon it is considered by the court, that the plaintiff re-
cover of the defendants the sum of $1,014.58," &c.

A bill of exceptions was signed by the court, which certi-
fies all the evidence in the case, which consisted of the bond,
on the part of the plaintiff, and then evidence on behalf of
the "defendants," which tended to prove, that the bond was
executed by defendant for cattle for use of the Confederate
army, and that said bond was to be paid in Confederate money.
Among other things one Martin Bennett, a witness for Saun-
ders, testified that Saunders requested him to take to Solomon
Phares, the obligee in the bond, $2,000.00 in Confederate money,
which he did, and told said Phares, that said Saunders had
sent him $2,000.00.   Phares replied "that won't pay all that
he owes me."   Phares then stated, that he had sold his cattle
for Confederate prices and must take Confederate money.

Phares remarked, that he had no use for the money and was too old and infirm to go and have it put in Confederate bonds. Witness then informed Phares, that Saunders said he would get the coupon bonds for him in room of the money if he desired it. Phares replied: "That will do," and after reflecting a moment told witness to pay him $400.00 of said money, as he would have taxes to pay and would need it. Phares received the $400.00, and told witness to take the balance back to Saunders and tell him to put it in coupon-bonds for him. Witness returned the balance of said money to Saunders with the request from Phares, that he would put it in Confederate coupon-bonds." Evidence was offered by the plaintiff in rebuttal of the defendant's evidence, and the bill of exceptions shows the evidence was conflicting on all the points to which it relates.

After the evidence was all in, the court on motion of the "defendants" gave three instructions, and also on motion of the plaintiff gave two instructions to the jury, to the giving of which last instruction the "defendants" excepted, &c. The first instruction for defendant was to the effect, that if, at the place and at the time the bond was executed, Confederate money was the general and recognized currency, and parties were in the habit of buying and selling for such currency, the presumption would be, that the parties to the bond intended it to be paid in Confederate currency, until the contrary was shown. The *second*, that if the said bond was executed with the agreement or understanding, that it was to be paid in Confederate money, it was void. The third, that if the bond was given for cattle, and the obligee in the bond sold them to be used to uphold *rebellion or knew or had reason to believe that they* were to be so used, the bond is void without reference to the kind of money, in which it was to be paid. The two instructions for plaintiff were first, that before the jury could find for defendant on first plea, they must find from the evidence, that it was the agreement of the parties, at the time the bond was executed, that the same should be paid in Confederate money, and unless they so find, they must find for the plaintiff; and *secondly*, that under the second plea, unless they believe from the evidence, that the cattle were purchased for the purpose of feeding the army of the Confederate States, and that the obligee knew at the time of the said sale, that said cattle were

purchased for such use, they must find for the plaintiff on that plea.

After the judgment was rendered, and before a writ of error was applied for, the defendant, Saunders, died as appears from the petition for said writ of error, and there is no evidence in the record, that the suit was in the court below revived against the personal representatives of said Saunders.

Upon the petition of Isaac Boggs, sheriff of Pendleton county and as such administrator of the personal estate of Edward T. Saunders, deceased, who in his petition alleges, that the estate of said Saunders was by the county court of Pendleton county committed to him as such sheriff, a writ of error was awarded. The defendant in error here has in no way controverted the fact alleged in said petition, that since said judgment was rendered, said Saunders had died and his personal estate had been committed to him for administration.

*A. C. Snyder* and *J. M. Sieg* for plaintiff in error.

*W. H. H. Flick,*for defendant in error, cited the following authorities: Acts 1872–3, chap. 17, § 2; 1 Rob. (old) Pr. 656; 657 and cases cited ; *Id.* 574; 6 Rand. 184; Barton Pr. 326; 4 Min. Inst. 796, 801; 9 Leigh 312; 20 Gratt. 484; 16 Gratt. 414; 7 W. Va. 325; *Id.* 54; 3 W. Va. 391; 2 Call 22; Code 597 §13; Acts 1866 p. 93; Acts 1868 p. 48; Code p. 573 §2; *Id.* p. 606 §46; 11 W. Va. 198 ; Code ch. 134 §3; 4 W. Va. 184; *Id.* 42; 20 Gratt. 349; 13 W. Va. 158; 11 W. Va. 283; 2 Leigh 107; 20 Gratt. 519; 8 Gratt. 289; 4 Rand. 348; 11 Gratt. 608 ; *Id.* 93; 24 Gratt. 197 ; *Id.* 543; 8 W. Va. 382; 2 Rand. 446.

JOHNSON, PRESIDENT, announced the opinion of the Court:

The first question presented in this case is: Could the petitioner obtain a writ of error to the judgment upon his petition showing, that his intestate died after the judgment was recovered, the plaintiff not having revived the suit ? The petition alleges, that since the rendition of the judgment the defendant, Saunders, has died, and that the petitioner has been appointed by the county court of Pendleton county administrator of the estate of the said defendant. These facts could have been controverted here by the defendant in error, but they have not

been controverted and must be taken as true. It is true, that it is a general rule, that no person can bring a writ of error, who is not a party or a privy to the record; but the right to bring the writ of error in case of the death of the party, against whom the judgment was rendered, will be in the personal representative without a revival of the judgment, because the personal representative stands in the shoes of the deceased and has the same rights, as his intestate had, with reference to the judgment. 1 Lomax on Executors 539, and cases cited. It would be strange, if this were not so. The administrator cannot revive the suit in the court below; and the denial of his right to his writ of error before revival might entirely defeat his right to a revival besides delaying him for an indefinite time in settling his administrative accounts. The statute of limitation bars a writ of error in five years from the date of the judgment, and a *scire facias* in ten years. In this state of the law the plaintiff in the judgment might wait until the five years had expired, so as to bar a writ of error, then revive the judgment and thus deprive the administrator of any right to have the case heard and reversed in the appellate court, or at least render it doubtful, whether he could do so.

Should the judgment be reversed? The special pleas copied by the clerk and certified as being filed in the papers and so endorsed by the clerk are no part of the record, there being no order of the court filing them. *Sims* v. *Bank of Charleston,* 8 W. Va. 274; *Cunningham* v. *Mitchell,* 4 Rand. 189. The judgment is joint, and from the nature of the bond sued on and the fact, that the suit was brought against both, if both were served with process or appeared, there could not be a several judgment rendered against them, where neither party pleads matter, which goes to his personal discharge. *Snyder* v. *Snyder,* 9. W. Va. 415. But in this case there was no service as to Eagle, and no plea as to him, and yet it appears, that he with the other defendant moved for a new trial and excepted to the instructions for plaintiff. If he had been served with process or pleaded to the action before trial, there ought to have been judgment entered in the case. If he was a non-resident, as the order of publication shows, then there should not have been a personal judgment against him without his appearance.

The record in this case is in the utmost confusion from beginning to end. The declaration was filed at July rules, 1868, and the plea of payment as to Saunders was filed on the 5th day of June, 1868, a month before this declaration appearing in the record was filed, showing it could not refer to that declaration. No special pleas were filed, as far as the record shows, yet all the instructions given on the trial relate to special pleas, which the court assumed were in the record ; and the evidence certified shows, that it was taken with reference to special pleas, which are assumed to have been in the record ; and finally a joint judgment was entered, when one of the defendants does not appear to have been before the court. In this confused state of the record it is very evident there was no fair trial of the case. *Griffie* v. *McCoy*, 8 W. Va. 201.

The judgment must be reversed with costs to the plaintiff in error, and the verdict of the jury be set aside, and a new trial be granted, the costs in the court below to abide the result thereof; and the case must be remanded to the circuit court of Pendleton county for a new trial to be had therein, with leave to the defendants to plead anew.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED, CAUSE REMANDED.