MILLER, Alien Property Custodian, v. ROUSE et al.

(District Court, S. D. New York. November 22, 1921.)

1. **War ⟨⟩12—Alien Property Custodian may recover property determined by him to belong to alien enemy.**

   A determination by the Alien Property Custodian that a demand against an estate is a debt owing to an alien enemy is conclusive for the purpose of a proceeding to enforce his demand for the payment of such claim to him.

2. **War ⟨⟩12—A demand by the Alien Property Custodian for a legacy as due to an alien enemy only substitutes him in place of the legatee.**

   A demand by the Alien Property Custodian on the executors of an estate for a legacy as bequeathed to an alien enemy is not a determination by him that the legacy is presently payable, but merely substitutes him to the rights of the legatee, and does not entitle him to a summary order for its payment.

3. **War ⟨⟩33—Demand for property by Alien Property Custodian served after declaration of peace held ineffective.**

   A demand by the Alien Property Custodian for property, signed before, but not served until after, the declaration of peace with Germany, July 2, 1921, *held* ineffective to vest title to the property in the Custodian.

Petition by Thomas W. Miller, Alien Property Custodian, against Harry G. Rouse and Mortimer Rouse, as executors of Callman Rouse, deceased. On motion for summary order. Granted in part.

Motion on petition by the Alien Property Custodian to compel the summary payment by the executors of Callman Rouse of certain claims alleged to be due from Ruth Marcuse, formerly an alien enemy. One was for $4,500, found by the Custodian to have been due as a debt, and the other, $10,000, found to be due as a legacy.

George Winship Taylor, of Baltimore, Md., for Alien Property Custodian.

John M. Stoddard, of New York City, for executors.

LEARNED HAND, District Judge. [1] Two demands were made on the executors on September 23, 1919. One of these determined that there was a "certain obligation and indebtedness represented by a certain indebtedness in the sum of $4,500," which the Alien Property Custodian thereupon demanded. The respondents object that this debt of $4,500 was an unexecuted gift. Perhaps so, but the Custodian has determined that it was a debt, and his determination is conclusive for the purposes of this motion. Central Trust Co. v. Garvan, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. ——. Section 5 of the resolution of July 2, 1921, preserves the right of the United States to such property, and this proceeding is merely to enforce the capture so made. So much of the motion is granted.

[2] To the legacy of $10,000 different considerations apply. The other demand made on the 23d day of September, 1919, determined that the alien, Ruth Marcuse, had "a certain right, title, and interest as a beneficiary under the will of Callman Rouse," and this was duly demanded, the demand operating as a capture, just as did the other of even date. However, this capture did no more than substitute the Custodian in the place of the beneficiary; it did not profess to determine what her rights were as such, and in the absence of such determination there is no specified fund or obligation on which the capture can operate. The capture has put the Custodian in the place of Ruth Marcuse, but he must work out his rights in accordance with the determination; he becomes entitled to all rights which she had as beneficiary under the will of Callman Rouse and no more. Kahn v. Garvan (D. C.) 263 Fed. 909, 912. No summary order can go on that demand; the Custodian is merely a legatee under the will.

[3] Still a third demand was served on the executors, this one on July 5, 1921, three days after the declaration of peace as now promulgated by the President's recent proclamation. This demand was signed before July 2, 1921, and determined that a "certain obligation and indebtedness, consisting of a bequest of $10,000 * * * is by you owing" Ruth Marcuse. I may assume that, as this determined that a legacy was "owing," it meant immediately owing, and that it was the equivalent of deciding that there was a debt due from executors. If the demand was valid when made, an order should go upon it, and the question therefore is presented whether the Custodian had that right on July 5, 1921.

The case therefore comes down to this: Was the capture completed by the signing of the demand or must it be served? The word "demand" does not appear in the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.) at all, which uses the word "require" in its stead. Section 7 (c), (d). The executive regulations define "require" as equivalent to "demand," but provide (section 2) for not only a "demand," but for a "notice," to be served on the person who holds the property. Normally a "demand" should include the communica-

tion of the claim to the person against whom it is directed. Probably in section 2 of the executive order this is not its meaning; it is to be treated as a completed "demand" when once drawn up. Yet under section 2 (c) it is only after notice that the property vests in the Alien Property Custodian. Therefore it is apparent that under the executive orders the capture is made to depend upon the service of the demand, and this conforms with the meaning of "require" in the act itself.

The Custodian, however, argues that, as the peace resolution (section 5) reserved to the United States all property which "has been the subject of a demand," the mere signing of the demand is enough. I am clearly of another opinion. The property does not become the "subject" of a demand till those acts are done which would vest the property in the United States, and that, as I have said, even under the executive orders themselves, is only when the demand is served. It would perhaps be hazardous to assume that Congress could not make the mere determination of the Custodian, though never served, the equivalent of a capture, but I should have to have the clearest possible evidence of intention to suppose that it had done so. Normally, capture is seizure, and seizure is an act of forcible taking. Of course, under this statute no forcible taking is necessary; a demand is enough, just as a defendant in ordinary actions is to-day merely served with notice of the suit. No capias is necessary; if a capias could have been executed, the notice is held an equivalent. In the case of choses in action, where the property cannot be forcibly taken, notice is all that can be given, unless the enemy's debtor is himself to be seized. The analogy of garnishment is directly in point.

This is certainly the procedure which the statute intended to be used, and the word "require" admits of no other reasonable understanding. Similarly property does not become "subject" to a "demand" till its possessor or the obligor of a chose in action has had notice of it. That alone is a symbolic capture. The conclusion necessarily follows that the service on July 5, 1921, was too late, and that the capture was never made. As to this claim the petition is denied.