# Richmond

## R. B. CLAIBORNE AND OTHERS, TRUSTEES OF LIBERTY BAPTIST CHURCH, ETC. v. JOHN B. WILSON.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Hutcheson & Hutcheson, G. R. Humrickhouse* and *F. D. G. Ribble,* for the appellants.

*Charles J. Faulkner* and *Ralph T. Catterall,* for the appellee.

Eggleston, J., delivered the opinion of the court.

Norman Bowers died in July, 1924, leaving a will containing the following clauses material to the present litigation:

"The Balance of my home tract, * * * I give to my Daughter, Lucy Wilson, during her life and at her death to my Grand-Son Thomas Wilson (this being approximately eighty acres).

\* \* \* \* \* \* \* \*

"It is my wish that the real property coming to my Daughter Lucy Wilson, or to my grand children mentioned shall revert indefinitely to their heirs (being my descendants) Should however there be no direct heirs, then I direct that the property go to the benefit of the three following churches in like amounts, i.e. Old Liberty Church, St. Matthews Church and St. Luke's Church."

The following persons interested in the present controversy survived Norman Bowers: Lucy Wilson, his daughter, John B. Wilson, her husband, and Thomas Wilson, the testator's grandson, the son of John B. and Lucy Wilson.

Sarah Wilson, a granddaughter of the testator, although mentioned elsewhere in the will, is not interested in the present litigation.

Lucy Wilson died in 1926. Thomas Wilson died in 1934, intestate, unmarried, and without issue, leaving his father, John B. Wilson, as his sole heir. Code, section 5264 (as amended by Acts 1923, Ex. Sess., ch. 143).

In a suit brought to construe the said will the trial court held and decreed that under the language just quoted Thomas Wilson took a fee simple title to the property, which, upon his death, passed and descended to his father, John B. Wilson.

From this decree the trustees of the three churches mentioned in the will have taken this appeal. Their principal assignment of error is that the trial court should have decided that under the above clauses of the will the fee simple title to the property is in them and not in the said John B. Wilson.

It is the contention of the appellee, John B. Wilson, upheld by the trial court, that the testator intended that the property should go to Lucy Wilson for life, then to Thomas Wilson,

and to such of his heirs as might be the direct lineal descendants of the testator, "indefinitely," that is, from generation to generation until the last of such direct descendants should pass away, and then, and not until then, should it go to the three named churches.

This gift over to the churches, the appellee says, violates the rule against perpetuities and is void because it depends upon the failure of the direct lineal descendants of Thomas Wilson, not at the time of his death, but at some *indefinite time,* possibly in the remote future.

The appellants, on the other hand, claim that the gift to the churches does not violate the rule against perpetuities because the testator intended by this language to refer to a *definite* failure of such direct lineal descendants, that is, at the time of the death of Thomas Wilson, and not in some distant or remote generation.

The appellants argue that by the above clauses of the will the testator intended:

(1) Either a gift of the property to Thomas Wilson for life, with the remainder to such issue of Thomas as might be living at his (Thomas') death; and if Thomas left no issue surviving him, then the property should go to the three churches. This latter contingency, they say, has occurred.

(2) Or a gift to Thomas Wilson in fee simple, such fee, however, to be defeasible should Thomas die without issue, in which latter event the property was to go to the three churches. And they say that the fee to Thomas Wilson has been defeated by reason of his dying without issue.

It is apparent from this statement of the position of the appellants that their title to the property can be sustained only upon the theory that the gift over to the churches was conditioned upon the failure of Thomas Wilson to leave any direct descendants living at the time of his death. Indeed, the appellants concede that if the testator intended that the gift to the churches should be conditioned upon the failure of Thomas Wilson's direct descendants some time in the remote future, then the devise violated the rule against perpetuities, and they have no case.

In *Skeen* v. *Clinchfield Coal Corp.,* 137 Va. 397, 403, 119

S. E. 89, 90, Judge Kelly quoted with approval the rule against perpetuities as thus stated in Graves' Notes on Real Property, section 215:

" 'Any executory interest which, by possibility, may not take effect until after lives in being and twenty-one years and ten months is *ipso facto* and *ab initio void*. In other words, the executory interest is void for remoteness if, at its creation, there exists a *possibility* that it may not take effect during any fixed number of now existing lives, nor within twenty-one years and ten months after the expiration of such lives, even though it is highly probable, or indeed, almost certain, that it will take effect within the time prescribed.' "

"Nor is it material in such cases how the fact actually turns out. The possibility that the event may, in point of time, exceed the limits allowed, vitiates the limitation *ab initio*." Minor on Real Property (2d Ed.), section 820, p. 1060; *Griffith* v. *Thomson*, 1 Leigh (28 Va.) 321, 329.

Speaking of the application of the rule, Minor on Real Property (2d Ed.), section 818, p. 1058, says:

"It is very clear that any limitation which is only to take effect upon a *failure* of one's heirs, or heirs of the body, or issue, or descendants, etc., at *any period whatsoever*, may, in the event, be postponed beyond the prescribed term of a life or lives in being, and twenty-one years and a few months, and will therefore be void for remoteness. Thus, where lands are given by will or grant, to A and his heirs, and *upon the failure of his heirs*, to Z in fee, one has no difficulty in perceiving that the limitation to Z is inconsistent with the rule against perpetuities, and is invalid."

When we give effect to every word used by the testator, as we must, it is impossible to adopt the interpretation contended for by the appellants that the testator intended that the gift to the churches should take effect should Thomas Wilson die without direct descendants.

The language used by the testator is that the property devised to his daughter, Lucy Wilson, and to his grandson, Thomas Wilson, "shall revert indefinitely to their heirs (being my descendants) Should however there be no direct heirs,

then I direct that the property go to the benefit of the three following churches," etc.

In order to avoid the rule against perpetuities the appellants contend that the words, "should however there be no direct heirs," are limited to the date of the death of Thomas Wilson. But, we think, it is impossible to separate this language from the remainder of the clause that the property "shall revert indefinitely" to such heirs. By this language, we think, the testator intended that the property should stay in his family as long as there were direct descendants of the grandson, and only when there were no such direct descendants should it pass to the churches.

Nor do we find any merit in the argument that Code, section 5151, prevents the application of the rule against perpetuities to the gift over to the churches.

This section provides: "Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring or descendant, or other relative, shall be construed a limitation, to take effect when such person shall die not having such heir or issue, or child or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it."

Appellants argue that under this section there is a presumption that the testator intended that the gift to the churches should be limited upon a definite failure of issue, that is, at the time of the death of Thomas Wilson.

But the answer to this argument is the language of the statute itself. It says that there shall be a presumption that the testator intended a definite failure of issue "unless the intention of such limitation be otherwise plainly declared on the face of the will or deed creating it."

In the present case the language used, as we have already seen, does plainly declare that the limitation over to the churches shall take effect upon the failure of direct lineal descendants of Thomas Wilson at some *indefinite* future time.

In other words, the statute does not affect a limitation

expressly created upon an indefinite failure of descendants, as is the case here. Minor on Real Property (2d Ed.), section 821, p. 1062.

Our conclusion is that the gift over to the churches violated the rule against perpetuities and was void. This being so the devise was, in effect, "to Thomas Wilson and his direct lineal descendants," or "to Thomas Wilson and the heirs of his body," which is a fee tail, and by statute (Code, section 5150) is converted into a fee simple. *Larew, 3rd* v. *Larew, 2nd*, 146 Va. 134, 144, 135 S. E. 819; Graves' Notes on Real Property, sections 38, 40; Minor on Real Property (2d Ed.), sections 189, 190, pp. 250-253.

Accordingly the lower court was right in holding that upon the death of the said Thomas Wilson, intestate and without issue, the property descended to his father, John B. Wilson, his sole heir at law. Code, section 5264.

We find no merit in the second assignment of error that the trial court erred in striking out certain allegations in the answer of appellants. These allegations were that the testator had a decided dislike for John B. Wilson; that one of the primary purposes of the will was to prevent his sharing in any of the testator's property; that the testator was an illiterate man, unfamiliar with the preparation and interpretation of wills; and that he had often expressed the intention that in the event of the present situation the churches should receive the property. The effect of striking out these allegations was to refuse the admission of testimony sustaining them.

In the first place, it is apparent from the will itself that the testator, by attempting to otherwise dispose of his property, intended to exclude John B. Wilson as a beneficiary. Testimony of the testator's dislike for him would have added nothing to what is already thus evident.

In the next place, it needs no proof to show that the testator was an illiterate man who knew nothing of the technical interpretation of wills. This is conceded and is demonstrated by the fact that he could not write his name but signed the will by making his mark.

Therefore, the proof of these facts, even if admissible, would in no wise have strengthened appellants' case.

■■■ Finally, it is well settled that the testator's declarations of intention are not admissible to vary the plain language of the will. *Ward* v. *Ottley*, 166 Va. 639, 643, 186 S. E. 25; *Coffman's Adm'r* v. *Coffman*, 131 Va. 456, 461-464, 109 S. E. 454; *Widgeon* v. *Widgeon*, 147 Va. 1068, 1072-1074, 133 S. E. 353.

The decree appealed from is

*Affirmed.*

CAMPBELL, C. J., and BROWNING, J., dissenting.