# Richmond

JAMES MANN, JR., ETC. v. WALTER E. LAND, AND OTHERS.

April 21, 1941.

Record No. 2326.

Present, All the Justices.

*Mann & Tyler* and *Campbell L. Stirling,* for the appellant.

*Sidney H. Kelsey,* for the appellees.

HOLT, J., delivered the opinion of the court.

Evelyn C. Mahon Land died testate in Norfolk on March 6, 1938, leaving a last will of date February 11,

1937. Walter E. Land, her husband, qualified as executor and proceeded to administer on her estate. This will, now under review, is as follows:

"LAST WILL AND TESTAMENT OF EVELYN C. MAHON LAND: DECEASED.

"I, Evelyn C. Mahon Land, of the Town of Virginia Beach, County of Princess Anne, State of Virginia, being of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament, hereby revoking all other wills by me made at any time prior to this date.

"First: I desire all my just debts to be paid.

"Second: I give, devise and bequeath to my beloved husband, Walter E. Land, should he survive me, all cash in bank or wherever found, my real estate consisting of one lot and dwelling house located at #309 Twenty-ninth Street, in the Town of Virginia Beach, Virginia, all my investments in real estate securities now in the hands of Percy H. Russell Co., #1731 K Street, N. W., Washington, D. C.

"Third: I give, devise and bequeath unto my cousin Miss Nannie Wilson, whose present address is Jewell Post Office, Anne Arundel County, Md. five (5) bonds of the Capital Traction Street Railway, Washington, D. C. Should I survive her the bonds herein bequeathed to Miss Nannie Wilson, to be divided equally between her two brothers Dr. Compton Wilson and Eliel Wilson.

"Fourth: I give, devise and bequeath unto my brother in law Joe R. Mahon, whose present address is Holly Springs, Mississippi, Route #4, three (3) bonds of the Southern Hotel Company.

"Fifth: I give, devise and bequeath unto my sister in law, Mrs. Willie Mahon, whose present address is 502 North Willomont Street, Dallas, Texas, three (3) Southern Hotel Bonds.

"Sixth: I give, devise and bequeath unto my niece, Mrs. Louise M. Kirk, whose present address is 502 North

Willomont Street, Dallas, Texas, two (2) Southern Hotel Bonds.

"(Bonds and interest of the Southern Hotel Corporation, or Southern Hotel are payable at the Bond Department of the National Bank of Commerce of Memphis, Tenn.)

"Seventh: I hereby nominate and appoint my husband Walter E. Land, of the Town of Virginia Beach, Va., executor of this my last will and testament consisting of two sheets numbered one and two, with full power and authority to execute the same according to its true and intended meaning and having perfect confidence in his judgment and integrity, I direct that the said executor shall not give security.

"Given under my hand, this the 11th day of February, in the year, 1937.

EVELYN C. MAHON LAND (Seal)"

Under the authority given in the third clause of this will, which was duly probated, the executor delivered to Nannie Wilson five bonds of the Capital Traction Street Railway. In June, 1939, she filed her bill in the Circuit Court of the City of Norfolk, in which she set out the fact that there were ten of these bonds of $500 each, with an aggregate par value of $5,000, and charged that it was the intention of the testatrix to give to her all said bonds and not five of them—that is to say, that it was her intention to bequeath to her $5,000, and not $2,500. In July of that year the executor filed a demurrer. That demurrer the court sustained by its decree of December 8, 1939. In its order in this final provision:

"It is further ordered, adjudged and decreed that the said demurrer be sustained and the bill of complaint be dismissed, and judgment be entered for the defendant; that defendant recover of complainant his costs incident hereto, and all costs incident to this cause be taxed against complainant;

"And nothing further remaining to be done in this matter, it is further directed that the clerk remove the same from the docket."

No petition for an appeal to this court was filed by the complainant, Miss Nannie Wilson. She died in February, 1940. On April 3, 1940, James Mann, Jr., qualified as her administrator, c. t. a., and gave notice of his purpose to apply for a transcript of the record that he might prosecute his appeal in this court.

Code, section 6165, provides that no suit shall abate whether it be in a court of original or appellate jurisdiction because of the death of a party during its pendency, but that the same may be revived against the personal representatives of decedent. Code, section 6168, provides that at any stage in any case, when the death of a party occurs, the personal representative may sue out a *scire facias,* or proceed by motion as if death had not occurred.

Code, section 6169, provides:

"*Scire facias* may be issued in vacation, and order of revival entered at rules.—The clerk of the court, in which the case is, may issue such *scire facias* at any time, and an order may be entered at rules for a case to proceed in the name of the proper party, although the case be on the court docket."

Code, section 6171, tells us when cases are discontinued unless revived:

"When discontinued, unless revived.—If the committee, personal representative, heirs, or devisees of the plaintiff or appellant who was a party, or of the decedent whose personal representative was plaintiff or appellant, shall not make such motion, or apply for such *scire facias,* at or before the second term of court next after that at which there may have been a suggestion on the record of the fact making such *scire facias* or motion proper, the suit of such plaintiff or appellant shall be discontinued, unless good cause be shown to the contrary."

The petition for appeal was received by us on April

8, 1940. Nothing looking to a revival had been done in the lower court and nothing could be done. The cause had been dismissed on December 8, 1939, and stricken from the docket. So far as that court was concerned, it was dead and done with long before any petition was presented to us. This situation was recognized by the ancillary administrator, who said:

"* * * Your petitioner prays that if a writ of *scire facias* or any other step is necessary in order to revive this case *in this court,* the court will issue such writ or take such step or steps as may be necessary." (Italics supplied.)

In *Booth* v. *Dotson,* 93 Va. 233, 24 S. E. 935, as in this case, there was a motion to dismiss. It appears that the appellant, Booth, died before a petition for a writ of error was presented. The petition was in his name. A writ of error was awarded. The court held that it was improperly awarded and "with reluctance" dismissed it. The court in substance held that a dead man can not appeal, and in the course of its opinion said:

"The party applying for the writ must be a party, or some privy aggrieved. Hence in this case, the plaintiff being dead, his personal representative was in a legal sense the person aggrieved. It is a fundamental principle that all suits must be instituted by and prosecuted against living persons, either in a personal or representative capacity. There must be such parties to the record as can be affected by the judgment, and from whom obedience to the mandate of the court can be compelled. 1 Freeman on Judgments, sec. 153.

"In the case of *Phares Ex'r* v. *Saunders's Adm'r, et als.,* 18 West Va. 336, it was held as a general rule 'that no person can bring a writ of error, who is not a party or privy to the record; but the right to bring the writ of error in case of the death of the party, against whom the judgment was rendered, will be in the personal representative, without a revival of the judgment, because the personal representative stands in the shoes of the

deceased and has the same rights, as his intestate had, with reference to the judgment.' This answers the enquiry made in the argument in the case here, viz: How else could the writ of error in the case here have been obtained? See also 1 Lomax Exor's, (2 Ed.) 539, and Bac. Abridgment, Error, B.''

The case of *Jackson's Adm'r* v. *Wickham & Northrop,* 112 Va. 128, 70 S. E. 539, is strikingly like that under review. In concluding its opinion the court said:

"Before counsel were advised of the plaintiff's death they presented a petition for a writ of error to this court in her name, which was granted; but the court's attention having been called to the fact that the plaintiff was dead when the writ was allowed, it was dismissed under the authority of *Booth* v. *Dodson,* 93 Va. 233, 24 S. E. 935. Thereupon, a second petition was presented in the name of the administrator, upon which this writ of error was granted.

"This practice is in accordance with the decision of *Booth* v. *Dodson, supra,* where it was held: 'An appeal or writ of error cannot be granted to one who is dead. His personal representative is the party aggrieved, and the person to apply for the appeal or writ of error.'

"It follows from what we have said that the judgment of the lower court must be reversed, and this court, in accordance with the statute, will enter judgment on the verdict found by the jury at the first trial."

The administrator in this case, without more, was heard, and his case was decided upon its merits. No formal action looking to a revival appears to have been taken. We hear cases upon their merits, if we can, and dismiss them when we have to. The motion to dismiss is overruled.

If Mrs. Land gave to Nannie Wilson five bonds and not ten bonds, we are presented with a case of partial intestacy. Partial intestacy is not favored, but it does occur, and when it does occur it can not be wiped away. Testators make their own wills.

■ We come then to this: Is there any ambiguity in clause three? If there be none, there is no room for construction. The intentions of a testatrix are merged in her will as written. If, upon reflection, she finds they have been inaccurately expressed, it should be made clear by a new will or by a codicil. This will bears date of February 11, 1937, and has not been changed by codicils or otherwise.

In *Coffman's Adm'r* v. *Coffman*, 131 Va. 456, 109 S. E. 454, is this statement taken from an address of Professor Graves, 14th Va. Law Register, 913:

■ "There is but one situation in which the judicial expositor has the right to invoke the aid of declarations of intention, and that is where the words in the will describe well, but equally well, two or more persons or two or more things, and such declarations are offered to show which person or which thing was meant by the testator— i. e., by the words in the will as used by him."

Where the identity of the donee is in doubt extrinsic evidence is competent.

In *Hawkins* v. *Garland's Adm'r*, 76 Va. 149, 44 Am. Rep. 158, there was a gift to Samuel G., son of Captain John S. Slaughter. There was no such person in being when the will was executed. The gift was intended for Samuel G. Hawkins, and proof of that fact was offered and received.

In *Patch* v. *White*, 117 U. S. 210, 6 S. Ct. 617, 710, 29 L. Ed. 860, a testator gave to his brother a lot described as lot No. 6 in square 403. Proof that lot No. 3 in square 406 was intended was admitted and prevailed. He did not own lot No. 6 in square 403 but did own lot No. 3 in square 406. Had he actually owned lot No. 6 in square 403 proof that some other lot was in his mind would not have been received.

In Wharton on Evidence, Vol. II, p. 244, the author approves as accurate this statement by Blackburn, J., in *Allgood* v. *Blake*, L. R. 8 Eq. 160:

"'* * * 'the court is entitled to put itself in the posi-

tion of the testator, and to consider all material facts and circumstances known to the testator with reference to which he is to be taken to have used the words in the will, and then to declare what is the intention evidenced by the words used, with reference to those facts and circumstances which were (or ought to have been) in the mind of the testator when he used those words.' After quoting Wigram on Extrinsic Evidence, and *Doe* v. *Hiscocks,* he adds: 'No doubt, in many cases the testator has, for the moment, forgotten or overlooked the material facts and circumstances which he well knew. And the consequence sometimes is, that he uses words which express an intention which he would not have wished to express, and would have altered if he had been reminded of the facts and circumstances. But the court is to construe the will as made by the testator, not to make a will for him; and therefore it is bound to execute his expressed intention, even if there is great reason to believe that he has by blunder expressed what he did not mean.' "

In *Claiborne* v. *Wilson,* 168 Va. 469, 192 S. E. 585, this court, speaking through Mr. Justice Eggleston, said:

"Finally, it is well settled that the testator's declarations of intention are not admissible to vary the plain language of the will."

And in *McKinsey* v. *Cullingsworth,* 175 Va. 411, 9 S. E. (2d) 315, Mr. Justice Spratley said:

"Declarations of intention can not aid the court in interpreting the language of the will where there is no equivocation of parties or subject-matter."

In the instant case, there is no doubt about the identity of the donee. The description of that given is equally plain—"I give, devise and bequeath unto my cousin Miss Nannie Wilson, whose present address is Jewell Post Office, Anne Arundel County, Md. five (5) bonds of the Capital Traction Street Railway, Washington, D. C." Had these ten bonds in any respect differed from each other evidence as to those intended would have been competent.

In a letter written by the testatrix dated July 6, year not stated but manifestly subsequent to the execution of the will, she said:

"The Cap Traction street car bonds amount to $5,000.00 I willed to you when making my new will after I married Walter. I left the house on Va. Beach to him and also the investments with the Percy H. Russell Co., and the balance of some bonds in Memphis, Tenn. to Bro Joe, Sister Willie and Louise."

And this we may assume was her actual intention. The will itself was written in Norfolk. There was in the hands of a Washington broker these ten bonds, each for $500, but the will itself, in unmistakable terms gives to "my cousin Miss Nannie Wilson * * * five (5) bonds of the Capital Traction Street Railway, Washington, D. C."

Certainly five bonds are not ten bonds, and it is equally certain that a gift of five $500 bonds is not a gift of $5,000.

The learned trial chancellor in his opinion said:

"An effort is made to introduce letters to show that testatrix meant to bequeath Miss Wilson five (5) thousand dollars instead of five bonds, but it is universally held that where the will is clear and specific the practical construction of the interested parties is irrelevant and inadmissible.

"It is also equally well settled that where the language of a will is plain and unambiguous, evidence of declarations of intention or statements made by the testator are inadmissible for the purpose of giving the will a different meaning from that expressed."

We think he was right in this. Evidence of the intention of the testatrix which varies an accurate description of bonds bequeathed is not competent.

The decree appealed from must be affirmed.

*Affirmed.*