**BROWNELL, Atty. Gen. v. EDMUNDS et al.**
**Civ. No. 287.**

United States District Court
W. D. Virginia, Lynchburg Division.
March 7, 1953.

Rowland F. Kirks, Asst. Atty. Gen., Howard C. Gilmer, Jr., U. S. Atty., Roanoke, Va., and Elmer J. Kelsey, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Edward S. Graves and Edmunds, Whitehead, Baldwin & Graves, Lynchburg, Va., for defendants.

BARKSDALE, District Judge.

On April 17, 1945, Mrs. Shirley M. Suhling, a citizen and resident of Lynchburg, Virginia, died, testate, her holographic will having been dated July 11, 1944, and admitted to probate on June 12, 1945. Mrs. Suhling's husband, who predeceased her, was Johannes Suhling, a native of Bremen, Germany, who had been naturalized many years prior to his death. By her will, she first appointed a local trust company, her lawyer J. Easley Edmunds, Jr., and her son Thomas Fuller Torrey, as her executors. The latter two duly qualified, and are the defendants in this action, as is Thomas Fuller Torrey as an individual. After the appointment of her executors, Mrs. Suhling's will provides as follows:

"All that I have, real and personal, I leave to my beloved son, Thomas Fuller Torrey, with the exception of the following bequests."

The will then proceeds to enumerate fifteen bequests to members of her family, two servants and her Church. Then follows the bequest here in controversy:

"I also want my husband's family in Bremen, Germany, the Stellohs and Kleintitschens, to share in my estate (should they survive this war) to the extent of $20,000.00."

The will concludes with a further bequest of $5,000 to her Church as a memorial to her husband, and a final bequest of $10,-000 "to be used as a future memorial to my son, Thomas F. Torrey", which latter bequest being judicially determined to be void for uncertainty, lapsed and became a part of the residuary estate going to testatrix' son, Thomas Fuller Torrey, who was also her sole heir at law and distributee.

Mrs. Suhling's husband had one sister, Anna Catherine Suhling Stelloh, who re-

sided in Bremen, and died there on April 29, 1943. Mrs. Stelloh had one son, Johannes Stelloh, who died on July 14, 1941, survived by his widow and three sons, all of whom survived the war. Mrs. Stelloh also had a surviving daughter, Johanne Stelloh Kleintitschen, who had three daughters, all of whom survived the war. One of her daughters married one Vogel after Mrs. Suhling's death and prior to the termination of the war, and has a daughter, Sabine Claudia Vogel, who was born prior to the termination of the war and survives. Mrs. Suhling, at the time of her death, knew of the death of Johannes Stelloh, but she never knew of the death of her husband's sister, Anna Catherine Stelloh.

On February 18, 1946, the Alien Property Custodian issued Vesting Order 5940 under the authority of the Trading With the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 1 et seq., and Presidential Executive Order 9193, as amended, 50 U.S. C.A.Appendix, § 6 note, 7 Fed.Reg. 5205, vesting in himself for the benefit of the United States, all right, title, interest and claim of any kind or character whatsoever, of the Kleintitschens and Stellohs whose names were known to him, and members of the family of Johannes Suhling, the Stellohs and Kleintitschens, names unknown.

Demand having been made upon the executors for the fund here in controversy which was refused, on April 18, 1946, the Alien Property Custodian instituted his action in this court against the executors and Thomas Fuller Torrey, individually, for the purpose of obtaining an adjudication that he was entitled to payment of the fund here in controversy. After the substitution of the Attorney General as plaintiff therein, the executors paid the fund in controversy into the Registry of this court on November 4, 1946, pursuant to Rule 67, Federal Rules of Civil Procedure, 28 U.S.C.A. Following the filing of the defendants' answer, plaintiff moved for a summary judgment in his behalf, which motion was denied by order entered therein on September 15, 1947, the court being of opinion that the determination of the question of who was entitled to the fund in controversy must await the termination of the war, for reasons set out in an opinion. Clark v. Edmunds, D.C., 73 F.Supp. 390. Thereafter, by order of court, the fund was deposited at interest, and certain accretions have accumulated.

That action abated by reason of the failure to substitute as a party thereto the successor to the Attorney General who instituted the action, under the provisions of Rule 25(d), Federal Rules of Civil Procedure, and by stipulation, that action was dismissed on June 18, 1952.

The war between the United States and Germany was officially terminated by a Joint Resolution of Congress approved October 19, 1951, Public Law 181, 82nd Cong., 65 Stat. 451, and the Proclamation of the President of October 24, 1951, Proclamation 2950, 50 U.S.C.A.Appendix, p. xx, pursuant thereto.

Thereafter, this action was instituted on June 18, 1952, by James P. McGranery, Attorney General, as successor to the Alien Property Custodian, against the executors of Shirley M. Suhling, and Thomas Fuller Torrey as an individual. Subsequently, the present Attorney General, Herbert Brownell, Jr., has been substituted as plaintiff.

In addition to the foregoing facts, the parties have stipulated that, if two of the surviving sisters of Mrs. Suhling were to testify, they would say, in effect, that Mrs. Suhling was aware of the difficulties involved in giving money to German citizens during a war period, and that if such a gift were made during a war period it was liable to be confiscated by the United States Government, that she knew that such difficulties existed longer than the period of hostilities and existed until the official termination of the war, and that such difficulties had been brought particularly to the attention of Mrs. Suhling and other members of her family because of the fact that her husband undertook to set aside money for a relative in Germany during World War I, which was confiscated by the United States Government, and her husband had to sue to get his money back. Further, that Mrs. Suhling visited Bremen in 1921, and observed the unsettled condi-

tion of the family's financial affairs resulting from the war, even at that date.

Plaintiff, in his complaint, demands judgment that he is entitled to payment of the fund, with its accretions, here in controversy, with costs, and has filed his motion for a summary judgment. The defendants having demanded judgment, either that the legacy here in controversy is void and the fund therefore payable to the defendant Thomas Fuller Torrey as residuary legatee and sole distributee of the testatrix, or that it is payable to the German relatives of Johannes Suhling, have filed their motion for a summary judgment in their behalf.

In the predecessor action, Clark v. Edmunds, supra, after discussing at some length the questions involved, I arrived at the following conclusions, 73 F.Supp. 394:

"I am satisfied that the intention of the testatrix here was to make this bequest upon a condition precedent. The testatrix made a number of relatively small bequests to close friends and relatives. However, the great bulk of her estate was left to her only son. The bequest in controversy evidenced her desire to do something for her deceased husband's family. However, it appears clear from the affidavits filed in opposition to this motion that she knew that she was powerless to help them during the continuation of the war, and it seems to me clearly inferable that it was her intention to provide only for those who survived. It would seem to follow that no beneficiary would take anything unless he or she survived the war. If no beneficiary survive, then this bequest would lapse and become a part of the residuary estate. Therefore, conceding that the Custodian has acquired all the right, title and interest of all the beneficiaries, he nevertheless was not entitled to the fund or any part of it at the time of his vesting order, nor is he so entitled now. He must await the termination of the war to determine whether or not the interests which he seized will be entitled to the fund or not. A similar conclusion was reached by the Court in

Re Kielsmark's Will, 188 Iowa 1378, 177 N.W. 690, 11 A.L.R. 156.

"Upon the termination of the war, when it can be determined which, if any, of the German legatees have survived, there are a number of questions which may or may not arise. It is not my purpose at this time to undertake to answer them or even to state them. I do now hold (and only hold) that the plaintiff by virtue of the vesting order acquired as of the date of the order, all the right, title and interest of the German legatees in and to the fund here in controversy, but that as the bequest is ' upon a contingency which cannot be determined until the termination of the war, the plaintiff is not now entitled to an award of the fund. It follows that an order will be entered overruling plaintiff's motion for a summary judgment awarding him the fund."

Inasmuch as the war between the United States and Germany has now officially come to an end, it would seem that the time has come for the determination of the proper and legal disposition of the fund here in controversy. It is to be borne in mind that the vesting order which is the basis of plaintiff's action was a right, title and interest vesting, and not a vesting of the *res* itself, which remains in the registry of this court. The two forms of vesting order are discussed at some length in my former opinion.

It seems to me that the proper determination of this case depends primarily upon the proper construction to be given to Mrs. Suhling's bequest here in controversy. The plaintiff contends:

"The pertinent language of the will may be fairly construed to be a bequest of $20,000.00 to the members of the family of the decedent's husband, alive at her death, who should survive the war. The bequest would have lapsed if none of the members of the family, alive at the decedent's death, should be alive at the termination of the war."

On the other hand, defendants contend that:

"Mrs. Suhling's intention was to make a bequest to a class comprised of her husband's relations in Germany, and which class, unless the gift had lapsed, was to close finally only after the termination of World War II between the United States and Germany."

Both sides seem to agree that a gift to a class was intended. Stated more simply, the plaintiff's contention is that the class was composed of those members of Mr. Suhling's family who were *alive on the date of Mrs. Suhling's death*, their taking, however, to be subject to the contingency of their being alive at the end of the war: while the defendants contend that the gift was to a class composed of such members of Mr. Suhling's family as might be *alive at the end of the war*, irrespective of whether or not all of them were alive at the time of Mrs. Suhling's death.

██ In undertaking to construe the provision of Mrs. Suhling's will here in controversy, the rules of construction enunciated by the Virginia courts should govern. From the earliest times, Virginia courts have considered the intention of the testator of paramount importance in the construction of wills. In the very early case of Kennon v. McRoberts, 1 Wash. 96, 97, 102, 1 Am.Dec. 428, the court said:

"That the intention of the testator is to give the rule of construction, is declared by all the judges both ancient and modern. Ld. Holt and some others more modern, emphatically call that intention, the Polar Star, which is to guide our decision—and in a late case of Hodgson v. Ambrose, Dougl. 323, the court say, that this is the governing rule, to which all other rules of construction yield."

And later, in Conrad v. Conrad's Ex'r, 123 Va. 711, 716, 97 S.E. 336, 338, the court said:

"The rule is elementary that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy."

██ It is my conclusion to construe this bequest in accordance with the defendants' contention, that is, that the testatrix meant to include in her bequest all the members of her husband's family, of Bremen, Germany, who were alive at the legal termination of the war between the United States and Germany, and only such survivors. Considering the will as a whole, it would seem that Mrs. Suhling, in disposing of her estate, had in mind two considerations: first and foremost, obviously her primary consideration was to provide amply and generously for her only child; then, secondarily, she undertook to provide for her own relatives, her faithful servants, her Church, and her husband's family in Germany. Of course, no one other than the testatrix herself, whose lips are now sealed, can say with certainty what her intention was. However, I do not feel any doubt that any conclusion as to her intention other than the one I have reached, would be strained and unrealistic.

Mrs. Suhling did not undertake to name the legatees whom she wished to share in this bequest. It would seem that her motive was to provide financial assistance to the family group which might survive the war. She actually did not know, either at the time of making her will or at her death, who comprised this family group. She knew of the death of Johannes Stelloh, which occurred nearly six months before the entry of the United States in the war. However, she never knew of the death of her sister-in-law, Mrs. Stelloh, although her death occurred more than fourteen months before the date of the will and two years before the death of Mrs. Suhling. Obviously, she received little, if any, news of her husband's German relatives after the United States entered the war. She knew that other than Mrs. Stelloh, her husband's German relatives were young, and it is to be assumed that there were likely to be additions, and of course, she knew of the ever present wartime danger of deaths in the family. If Mrs. Suhling had meant to limit her bequests to persons then living, it would seem that she would have

undertaken to name them. It clearly appears that Mrs. Suhling knew that she was powerless to give any financial aid to anybody in Germany during the war. Consequently, it seems fairly inferable to me that all her thinking as to this bequest was focused on the situation as it might be when the war ended. It seems clear that she did not wish to include only those living at her death, and to exclude such others as might be born after her death, but before the end of the war. If I should construe the bequests as gifts to individuals living at the time of Mrs. Suhling's death, then the shares of any who might have died thereafter would have lapsed and the bequest would have been diminished to that extent, and Sabine Vogel, whose birth occurred after the death of Mrs. Suhling, but before the end of the war, would be excluded. I do not believe that this was Mrs. Suhling's intention. I am firmly convinced that she knew she could do nothing for any member of the family who might die during the pendency of the war, and it was her intention that the entire bequest should go to such members of the family, if any, who might survive the war.

■ It is therefore my conclusion that I must deny the plaintiff's motion for a summary judgment. Ordinarily, by reason of the vesting order, he would occupy the status of the legatees. Miller v. Rouse, D.C., 276 F. 715. However, under my construction of the will, the interests of the legatees did not vest until the date of the legal termination of the war, and at the moment of the termination of the war, when the interests of the legatees became vested, the legal efficacy of the vesting order terminated. By the express terms of the Trading With the Enemy Act, the Alien Property Custodian is only authorized to vest in himself for the benefit of the United States, property of enemy nationals during the time of war. Miller v. Rouse, supra, Matheson v. Hicks, D.C., 10 F.2d 872, Sutherland v. Guaranty Trust Co., 2 Cir., 11 F.2d 696.

■ There are also authorities to the effect that, where a similar intention to that expressed by Mrs. Suhling, is set out by a testator, and there is a gift over, the intent of the testator can be effectuated despite the provisions of the Trading With the Enemy Act and a right, title and interest seizure. It would seem to me that the provision of Mrs. Suhling's will leaving everything to her son with the exception of the named bequests, would be equivalent to a gift over. Harvard Trust Co. v. Attorney General, 329 Mass. 79, 106 N.E.2d 269, McGrath v. Ward, D.C., 91 F.Supp. 636. I do not consider Clark v. Continental National Bank, D.C., 88 F.Supp. 324, in conflict, because there the court construed the trust as creating a presently vested interest in the German national subject to a condition subsequent.

Having reached the conclusion that the plaintiff is not entitled to the fund here in controversy, it would be my desire to render a judgment requiring the payment of the fund to the members of the family of the late Johannes Suhling residing in Germany, as such, in my opinion, would be carrying out the plain and obvious intention of the testatrix. However, with regret, I reach the conclusion that such a judgment is precluded by the Rule against Perpetuities.

■ The Rule against Perpetuities is not a rule of construction: it is a rule adopted in furtherance of public policy to prevent any one from imposing excessive limitations upon the alienation of an estate.

"The result of such (excessive) limitations, if permitted without check or restraint, would be a tendency to tie up property and remove it for indefinite periods out of the channels of trade and commerce, to the great detriment of society." 1 Minor on Real Property (2d ed.) 1046.

■ As stated in 1 Minor on Real Property (2d ed.) 1047, the precise terms of the Rule against Perpetuities are as follows:

"Sec. 809. *Same—The Precise Terms of the Rule.*

"The considerations presented in the preceding sections have induced the courts to establish the principle that, though such future interests may be limited to as many persons successively

as the grantor or testator may think proper, yet they must all be in *esse* during the life of the taker of the first estate; or of some certain person in being at the time of the devise or grant, for then, as it was said, *the candles are all lighted and consuming together,* and the ultimate limitation is in reality only to that person who happens to survive the rest. More recently, this period has been somewhat prolonged by the addition thereto of the period of *gestation* (ten months, in Virginia) and twenty-one years (the age at which one thus *born after the termination* of the lives in being might first validly aliene the property). Hence the canon established on this subject as it exists in modern times, is that every executory limitation, in order to be valid, shall be so limited that it must necessarily vest, if at all, within a life or lives in being, ten months and twenty-one years thereafter, the period of gestation being allowed only in those cases in which it is a factor.

"But if the time during which the *contingent* limitation is not to vest is not measured by *lives* at all, but merely by a *definite or indefinite number of years,* it is then necessary that the designated period for the vesting should not be *postponed beyond twenty-one years,* all reference to lives in being and the period of gestation being stricken from the rule in such case."

Inasmuch as the provision of the will here in controversy constitutes a class gift, the following statement in 1 Minor on Real Property (2d ed.) 1065, is pertinent:

"Sec. 824. *Class Gifts and the Rule against Perpetuities:*

"It will be remembered that a gift to a class of persons is spoken of as being vested as soon as any member of the class comes within its terms. It is not, however, vested so as to prevent the application of the rule against perpetuities. A contingent gift to a class must be so limited as to vest, if at all, in each member of the class within the period prescribed, or the gift will fail as to the whole class. Thus a limitation to such of the grandchildren of the testator as shall reach 25 would be void, although there were grandchildren living at the testator's death. Obviously these grandchildren might die and others be born who would not reach 25 until more than 21 years after the termination of a life in being at testator's death. As viewed at *the testator's death* it cannot be told which, if any, of the grandchildren will reach the required age within the prescribed period, and consequently the limitation is *void* as to *all the members* of the class, even as to those who become twenty-five within the period."

It is also to be noted that the mere improbability that the limitation imposed by the testator will take effect beyond the period prescribed by the rule, is immaterial: in order to avoid the effect of the rule it must be legally impossible that the limitation will take effect beyond the prescribed period.

"Sec. 811. *Same. Mere Improbability That Limitation Will Take Effect beyond the Period Prescribed Immaterial.*

"The requirement that the contingent executory interest *must necessarily vest in right,* if it vests at all, within the period prescribed by the rule is an absolute requirement, and knows no exception. The mere *improbability* that the vesting will occur after that period, how great soever that improbability may appear, will not make the limitation good. The rule against perpetuities requires that it be *legally impossible* that the event upon which the future limitation is to vest in interest be postponed beyond life or lives in being, and ten months and twenty-one years."

"Thus, a devise or conveyance to such children of a living person as may be *living at a time too remote* under the rule is *void,* though the age of the living person be such (say eighty years) as to render it *practically*

(though *not legally*) impossible that children should be born to him or her, other than those *already living.*" 1 Minor on Real Property (2d ed.) 1050.

As well stated in defendants' brief, the situation here presented is as follows:

"In the instant case it seems to be clear that the testatrix meant to make a gift to a class, composed of her husband's relatives and conditioned upon survival of World War II. In considering whether the Rule against Perpetuities applies to this gift, two possibilities must be taken into account. The first possibility is that all of the members of the class living at the date of testatrix's death would not be in being at the termination of the war, but that some would be born after her death who might or might not be in existence at the time the war ended. The second possibility is that the war might not end until more than twenty-one years and ten months after the death of all members of the class living at the testatrix's death. These possibilities are illustrated by the birth of Sabine Vogel after the death of the testatrix. Had all of the relatives of Mr. Suhling living at Mrs. Suhling's death died before the war ended leaving Sabine as the only survivor, and had the war not ended for more than twenty-one years and ten months after the death of the last relative living at Mrs. Suhling's death, then not even Sabine's survival of the war would save the gift."

 Thus, it appears that the bequest here under consideration, being a contingent one, and the contingency upon which it was made being one which might not occur within the lives in being, and twenty-one years and ten months, the rule against perpetuities applies and the bequest must be held to be invalid.

It would seem that it would serve no useful purpose to discuss or quote from the Virginia decisions construing the Rule against Perpetuities, but the following authorities seem to support the conclusion which I have reached: Skeen v. Clinchfield Coal Corporation, 137 Va. 397, 119 S.E. 89; Claiborne v. Wilson, 168 Va. 469, 192 S.E. 585; Shenandoah Valley National Bank of Winchester v. Taylor, 192 Va. 135, 63 S.E.2d 786, 25 A.L.R.2d 1104.

 Since the plaintiff can in no event occupy a more favorable position than the legatees whose right, title and interest he has undertaken to seize, if my construction of the provision of the will here in controversy be correct, it would seem that the fact that the Rule against Perpetuities renders the bequest invalid, would for that reason preclude any recovery on the part of the plaintiff, in addition to the reason previously stated herein.

Having arrived at the conclusion that the bequest here in controversy is invalid, I am of the opinion that Thomas Fuller Torrey is entitled to the fund of $20,000 heretofore deposited in the Registry of this Court, with its accretions, under the provision of the testatrix' will:

"All that I have, real and personal, I bequeath to my beloved son, Thomas Fuller Torrey, with the exception of the following bequests:".

Therefore, an order will be entered overruling plaintiff's motion for summary judgment, granting the defendants' motion for summary judgment, and directing payment of the fund to the executors of Shirley M. Suhling, deceased, for distribution under her will to her only son, Thomas Fuller Torrey.

Although it has no direct bearing on the decision of this case, I do feel prompted to observe that the money which the plaintiff in this action is attempting to appropriate for the use and benefit of the United States is not German money at all. It is distinctly American money, part of the estate of a native born American citizen, who, pursuant to a laudable purpose, undertook to bequeath it to her late husband's family, who happened to be German nationals.