**CLARK, Atty. Gen., v. EDMUNDS et al.**
**Civ. A. No. 167.**

District Court, W. D. Virginia,
at Lynchburg.

Sept. 15, 1947.

David L. Bazelon, Asst. Atty. Gen., Howard C. Gilmer, Esq., Acting U. S. Atty., of Roanoke, Va., and Maurice Fitzgerald, Atty., Department of Justice, of Washington, D. C., for plaintiff.

Edward S. Graves, of Lynchburg, Va., for defendants.

BARKSDALE, District Judge.

Shirley M. Suhling died a citizen and resident of Lynchburg, Virginia, on April 1, 1945. Her holographic will was admitted to probate in the Corporation Court of that city on June 2, 1945. Among the provisions of the will was the following: "I also want my husband's family in Bremen, Germany, the Stellohs and the Kleintitschens, to share in my estate (should they survive this war) to the extent of $20,000."

The Alien Property custodian, by his Vesting Order No. 5940, issued on February 18, 1946, vested in himself all the right, title and interest of certain specifically named members of the Stelloh and Kleintitschen families, and of members of the families of Johannes Suhling (deceased husband of Shirley M. Suhling), the Stellohs and Kleintitschens, and each of them, whose names are unknown, in and to the estate of Shirley M. Suhling, deceased.

In April 1946, the Alien Property Custodian instituted this action invoking the aid of this Court to enforce compliance with the vesting order. Tom C. Clark, Attorney General, having succeeded to the powers and duties of the original plaintiff, has been substituted as plaintiff herein.

Defendants filed their motion to dismiss this action, because of non-joinder of indispensable parties defendant, and because prior jurisdiction had been assumed by the Corporation Court of the City of Lynchburg. Primarily upon the authority of

Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256, this motion was overruled; and thereafter defendants answered, and under the provisions of Rule 67, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, paid into this court the sum of money mentioned in the legacy, $20,000, which sum is now on deposit in the Registry Fund of this Court.

Thereafter, on May 10, 1947, plaintiff filed his motion for a summary judgment, asserting not only that he was entitled to a declaration by this Court that he became vested with all right, title and interest of the German legatees by virtue of the vesting order, but that, as the fund has now been paid into court, he should have judgment awarding the fund to him. Along with his motion, plaintiff has filed an affidavit and other supporting documents.

Defendants opposed plaintiff's motion and have filed affidavits and other documents in opposition thereto. Oral argument has been heard, and briefs have been filed in support of and in opposition to the motion.

Defendants rely on numerous grounds in opposition to plaintiff's motion, amongst others that the German legatees whose interests were seized by the plaintiff do not have any present transferable right to the fund here in question, and therefore the plaintiff is not now entitled to the fund, as plaintiff's rights are derivative only.

I do not have any doubt that the plaintiff, by his vesting order, acquired "all right, title, interest, and claim of any kind or character whatsoever" of the German legatees in and to the legacy here in question. Commercial Trust Co. of New Jersey v. Miller, 262 U.S. 51, 43 S.Ct. 486, 67 L.Ed. 858, Stoehr v. Wallace, 255 U.S. 239, 41 S. Ct. 293, 65 L.Ed. 604, and Central Union Trust Co. of New York v. Garvan, 255 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403.

But inasmuch as the vesting order here is a right, title and interest vesting order, and not a res vesting order, the question of whether or not the plaintiff is entitled to a judgment awarding him the actual fund itself, is another and more difficult question.

The foundation of plaintiff's claim is Title III of the Trading with the Enemy Act, as amended, 55 Stat. 839, the pertinent provisions of which are as follows:

"(1) During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—

" * * *

"(B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest,

by any person, or with respect to any property, subject to the jurisdiction of the United States; and any property or interest of any foreign country or national thereof shall vest, when, as, and upon the terms, directed by the President, in such agency or person as may be designated from time to time by the President, * * * ". 50 U.S.C.A. Appendix, § 5(b) (1) (B).

Consideration of the quoted portions of the statute would seem to lead to the conclusion that paragraph (B) gives to the President (or the plaintiff as his authorized representative) almost unlimited investigatory and regulatory power over the transactions involving any property in which any foreign national has any interest. However, the next paragraph, which empowers the President to vest property, provides that "any property or interest of any foreign * * * national thereof shall vest, * * * ". It seems to me that the scope of the investigatory and regulatory power is wider than the vesting power. The investigatory and regulatory power seem to cover any property in which a foreign national has any interest: while the vesting power covers only any property or interest of any foreign national. It seems to me that there is quite an appreciable distinction between any property in which one may have an interest, and his interest in property.

■ It must be continuously borne in mind that the vesting order here under consideration is a right, title and interest vesting order, and not a res vesting order. The Custodian has made no effort by administrative order to seize the res, the actual fund itself. The Custodian has vested in himself the right, title and interest of the German legatees, and by the institution of this action has submitted to this court for determination the question of what that right, title and interest is. It is true that the Custodian, by virtue of a right, title and interest vesting order, acquires superior possessory rights to the alien whose right, title and interest has been vested. During time of war, the provisions of the Trading with the Enemy Act absolutely prevent an unlicensed alien enemy, resident in an enemy country, from obtaining possession of any property located in this country, no matter how good his title thereto may be. Of course, these inhibitions do not apply to the Custodian. Therefore, when an alien has a vested interest in property in this country, whether his right of possession is deferred by will or by the provisions of the Trading with the Enemy Act, the Custodian may, by virtue of a right, title and interest vesting order, acquire the immediate possession of the actual property to which the alien has a vested right. For instance, in the case of Application of Miller, 2 Cir., 288 F. 760, 766, in holding that the Custodian was entitled to certain alien property, the court said: "It is clear that upon the death of Mr. Von Post the legatees immediately took vested interests in his estate under the seventh and eighth paragraphs of his will hereinbefore set forth. Although the time of payment was postponed, the legacies to be paid were definite and certain and not dependent on any contingency."

See also In re Reiner's Estate, Sur., 44 N.Y.S.2d 282, 283, in which it was held that the Custodian, under a right, title and interest vesting order, was entitled to the actual property. The court said: "The gift to each of these legatees vested indefeasibly in her upon the death of the decedent, with payment only postponed under certain stated conditions." See also In re Estate of Weigelt, 95 Pittsb.Leg.J. 181; In re Estate of

Englemohr, Orphans Court of Montgomery County, Pa., No. 49111, of 1945.

Plaintiff also relies upon Section 7(c) of the Trading with the Enemy Act, 50 U.S.C. A.Appendix, § 7(c), the pertinent part of which is: "If the President shall so require any money or other property * * * choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy * * * not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act."

It would be idle to speculate what the effect of this section might be if the Custodian, by his vesting order, had undertaken to seize the res, that is, the actual money here in controversy. However, the Custodian did not do this: in his vesting order, it appears that the property vested was as follows: "That the property described as follows: All right, title, interest and claim of any kind or character whatsoever of Hanna S. Kleintitschen * * * and members of the families of Johannes Suhling, the Stellohs and Kleintitschens, names unknown, and each of them, in and to the Estate of Shirley M. Suhling, deceased, is property payable or deliverable to, or claimed by, nationals of a designated enemy country, Germany * * *".

Thus, it is apparent that the property vested was not the actual fund, but the right, title, interest and claim of the German legatees.

■ Therefore, it would seem that if, under the terms of the bequest here in controversy, the German legatees took presently vested interests, payment only being deferred, plaintiff's motion should be granted and the fund should be paid over to him. Consequently, it is necessary to consider the bequest and determine whether or not the

German legatees took presently vested interests under the will.

It is necessary to determine whether or not the condition expressed in the bequest, "should they survive this war", is a condition precedent. It is true that the law favors the early vesting of interests. On the question of construction, while not strictly analogous, the case of Burdis v. Burdis, 96 Va. 81, 30 S.E. 462, 70 Am.St. Rep. 825, is interesting. The court said:

"The law is clear that where a condition precedent is annexed to a devise of real estate, and its performance is or becomes impossible, the devise fails, although there be no default or laches on the part of the devisee himself (2 Jarm.Wills, 10; 4 Kent, Comm. 125; 2 Minor, Inst. 228); but if the condition is subsequent, and its performance becomes impossible, the rule is different. In that case the estate will not be defeated or forfeited, but the devisee will hold the property by an absolute title, as if no condition had been annexed to the devise. 2 Jarm.Wills, 11; 4 Kent, Comm. 130; Ridgway v. Woodhouse, 7 Beav. 437; Collett v. Collett, 35 Beav. 312; McLachlan v. McLachlan, 9 Paige 534; Martin v. Ballou, 13 Barb. 119; Livingston v. Gordon, 84 N.Y. [136], 140; Merrill v. Emery, 10 Pick, 507, [27 Mass. 507]; Parker v. Parker, 123 Mass. 584; and Morse v. Hayden, 82 Me. 227, [229], 19 A. 443.

"There are no technical words to distinguish between conditions precedent and conditions subsequent. The distinction is matter of construction. The same words may indifferently make either, according to the intent of the person who creates the condition. If the language of the particular clause or of the whole will shows that the act on which the estate depends must be performed before the estate can vest, the condition is precedent, and unless it be performed the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, and this can be collected from the whole will, the condition is subsequent. Finley v. King ['s Lessee], 3 Pet. 346 [7 L.Ed. 701]; Martin v. Ballou, 13 Barb. 119; 4 Kent, Comm. 124." See also Wenner v. George, 129 Va. 615, 618,

106 S.E. 365; Graves Notes on Real Property, Secs. 251 and 252; Minor on Real Property, paragraphs 527, 528, 529, 824, 825, 826, and 827; 69 C.J. 675.

■ I am satisfied that the intention of the testatrix here was to make this bequest upon a condition precedent. The testatrix made a number of relatively small bequests to close friends and relatives. However, the great bulk of her estate was left to her only son. The bequest in controversy evidenced her desire to do something for her deceased husband's family. However, it appears clear from the affidavits filed in opposition to this motion that she knew that she was powerless to help them during the continuation of the war, and it seems to me clearly inferable that it was her intention to provide only for those who survived. It would seem to follow that no beneficiary would take anything unless he or she survived the war. If no beneficiary survive, then this bequest would lapse and become a part of the residuary estate. Therefore, conceding that the Custodian has acquired all the right, title and interest of all the beneficiaries, he nevertheless was not entitled to the fund or any part of it at the time of his vesting order, nor is he so entitled now. He must await the termination of the war to determine whether or not the interests which he seized will be entitled to the fund or not. A similar conclusion was reached by the Court in Re Kielsmark's Will, 188 Iowa 1378, 177 N.W. 690, 11 A.L. R. 156.

Upon the termination of the war, when it can be determined which, if any, of the German legatees have survived, there are a number of questions which may or may not arise. It is not my purpose at this time to undertake to answer them or even to state them. I do now hold (and only hold) that the plaintiff by virtue of the vesting order acquired as of the date of the order, all the right, title and interest of the German legatees in and to the fund here in controversy, but that as the bequest is upon a contingency which cannot be determined until the termination of the war, the plaintiff is not now entitled to an award of the fund. It follows that an order will be entered overruling plaintiff's motion for a summary judgment awarding him the fund.