CLARK, Atty. Gen. v. E. J. LAVINO & CO.

No. 9709.

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1949.

Decided June 1, 1949.

See also 72 F.Supp. 497.

Joseph W. Bishop, Jr., Washington. D. C. (David L. Bazelon, Asst. Atty. Gen., Gerald A. Gleeson, U. S. Atty., James P. McCormick, Asst. U. S. Atty., Philadelphia, Pa., James L. Morrisson, Washington, D. C., Attorneys, Department of Justice, on the brief), for appellant.

Joseph W. Henderson, Philadelphia, Pa. (Rawle & Henderson, Philadelphia, Pa., Thomas F. Mount, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The Attorney General, the Honorable Tom C. Clark, as successor [1] to the Alien Property Custodian, has appealed from the judgment of the court below directing E. J. Lavino & Company ("Lavino") to turn over and deliver to the Custodian the sum of $25,000, insofar as the judgment failed to award interest.[2]

In July, 1941 Lavino became indebted to Kawasaki Kisen Kaisha, Ltd. ("Kawasaki"), a Japanese shipping corporation, for $72,753.27, the sum representing freight charges for the carriage of freight in one of the latter's vessels. Lavino paid Kawasaki $47,753.27 but retained $25,000, claiming this amount as a set-off against damages which Lavino asserted it sustained because of Kawasaki's breach of a prior contract in failing to deliver to Lavino a shipment of chrome ore, whereby, Lavino alleges, it was damaged to the extent of $24,-759.

On July 30, 1942 the Custodian, having determined that Kawasaki was an enemy national within the meaning of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., issued two vesting orders, No. 77 and No. 80, by virtue of which all property of any nature whatsoever owned or controlled by, payable or deliverable to Kawasaki Kisen Kaisha, Ltd. and to Kawasaki Kisen Kabushiki Kaisha,[3] another Japanese corporation, or to their American branches, vested in the Custodian. These vesting orders were served on Lavino on August 7, 1946.

On September 12, 1946 the Custodian issued a turnover directive to Lavino, directing it to pay $25,000 to the Custodian, this sum, as we have said, being the balance due Kawasaki for transportation of freight. The order was served on Lavino on October 15, 1946. Upon Lavino's refusal to comply with the directive, the Custodian filed a petition in the court below, pursuant to Section 17 [4] of the Trading with the Enemy Act, 50 U.S.C.A.Appendix § 17, in which he prayed that an order be entered requiring Lavino to "* * * deliver $25,000 with interest thereon from September 5, 1942 to the petitioner * * *". In its answer Lavino set forth its claim of set-off claiming damages by reason of alleged prior breach of contract but admitted that $241 was due Kawasaki. This amount is the difference between the $25,000 retained by Lavino and its claimed damages of $24,-759. Lavino asserted that it stood ready and willing to turn over the $241 to the Custodian.

The court below entered judgment for the Custodian for $25,000 and interest from September 5, 1942. Lavino then moved to vacate the judgment, contending that the Custodian was not entitled to interest. The court vacated the order, and, after a rehearing on the sole question of interest, entered judgment directing that the "* * * respondent [Lavino] forthwith turn over and deliver to the petitioner [the Custodian] the sum of $25,000", interest being omitted from the judgment.

The Custodian has appealed, contending (1) that he is entitled to interest at a reasonable rate on the amount of $25,000 from

[1] By Executive Order No. 9788, effective October 15, 1946, 11 F.R. 11981, 50 U.S.C.A.Appendix, § 6 note, the Attorney General succeeded to the powers and duties of the Alien Property Custodian. For the purpose of convenience we shall employ the term "Custodian" as referring either to the Alien Property Custodian or to the Attorney General.

[2] Though the turnover directive re-required Lavino to turn over the ". . . property with all dividends, accumulations and increment thereon . . .", there is no showing that the fund received any accumulations or increment or that Lavino received any dividends. The notice of appeal raises but one question: viz., the failure to award interest in the judgment.

[3] The relation of this Japanese corporation to Kawasaki Kisen Kaisha Ltd. does not appear from the record. No question concerning the status of the second Japanese corporation is raised by the parties.

[4] Section 17 provides as follows: "The district courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this Act, with a right of appeal from the final order or decree of such court * * *."

October 15, 1946 (the date of the service of the turnover directive) to the date of Lavino's compliance therewith, and (2) that he is entitled to interest at 6% on the sum of $25,000 from July 1, 1941 (the date Lavino became indebted for transportation to Kawasaki) until October 15, 1946 (the date of service of the turnover directive).[5] Contention (2), supra, is based on the law of Pennsylvania which provides that interest at 6% accumulates on indebtedness from the date the debt should have been paid. Lavino for its part contends that the suit is possessory in character; that its purpose is to compel the transfer of a debt, and that under the Act the court below had no authority to do more than to direct the transfer to the Custodian of an amount of money equivalent to the debt. It follows, says Lavino, that the Custodian is not entitled to interest as a matter of law, citing Clark v. Manufacturers Trust Company, 2 Cir., 169 F.2d 932, 936, certiorari denied 335 U.S. 910, 69 S.Ct. 480.

■ The narrow question presented by the instant appeal is whether the Custodian is entitled to interest, and, if so, from what beginning date. The Act makes no provision for payment of interest where, as here, there is noncompliance with the Custodian's demand that enemy property be turned over to him.[6] In Clark v. Manufacturers Trust Co., supra, under circumstances analogous to those at bar the Court of Appeals for the Second Circuit held, one judge dissenting, that there is " * * * no reason to suppose that Congress intended the Custodian to get interest during the period elapsing between his demand for payment and the entry of judgment." We cannot agree. Although Congress did not deal with interest in the Act the absence of an express provision respecting it does not preclude its award.

In Board of Com'rs v. United States, 308 U.S. 343, 349, 350, 60 S.Ct. 285, 287, 84 L. Ed. 313, where, as in the instant case, the question was the right of the United States to collect interest prior to judgment in a suit to recover taxes wrongfully collected from an Indian ward of the United States by a county of the State of Kansas, the Supreme Court, speaking through Mr. Justice Frankfurter, pointed out that, "The issue is uncontrolled by any formal expression of the will of Congress.," and said, "In ordinary suits where the Government seeks, as between itself and a private litigant, to enforce a money claim ultimately derived from a federal law, thus implying a wish of Congress to collect what it deemed fairly owing according to the traditional notions of Anglo-American law, this Court has chosen that rule as to interest which comports best with general notions of equity. United States v. Sandborn, 135 U.S. 271, 281, 10 S.Ct. 812, 815, 34 L.Ed. 112; Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596. Instead of choosing a rigid rule, the Court has drawn upon those flexible considerations of equity which are established sources for judicial law-making." Compare also Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 92 L.Ed. 3; Royal Indemnity Co. v. United States, 313 U.S. 289, 295, 296, 61 S.Ct. 995, 85 L.Ed. 1361. The Act creates the obligation to turn over on demand the property of the alien, not only to keep such property from being used for the benfit of the enemy but also to "affirmatively compel the use and application of foreign property" in "the interest of and for the benefit of the United States." See H. R. Rep. No. 1507, 77th Cong., 1st Sess. pp. 2-3; 55 Stat. 839, 50 U.S.C.Appendix, § 5(b) (1).

■ When the Custodian served his turnover directive upon Lavino the latter had an immediate duty to comply. The statute requires an immediate transfer of

---

[5] The Custodian contends that under Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the court below should have granted him the relief to which he was entitled even though he demanded interest on the $25,000 only from September 5, 1942.

[6] See, however, Section 16 of the Act, 50 U.S.C.A.Appendix, § 16, which provides that "Whoever shall wilfully . . . refuse to comply with any order of the President issued in compliance with the provisions of this act, shall, upon conviction be fined not more than $10,000, or, if a natural person, be imprisoned for not more than ten years, or both." In this connection see Stoehr v. Wallace, 255 U.S. 239, 245, 41 S.Ct. 293, 65 L.Ed. 604.

the property to the Custodian without resort to the courts by the holders of the property. On surrender of the property Lavino could have at once filed suit under Section 9 of the Act, 50 U.S.C.A.Appendix, § 9, and in that proceeding could have litigated fully and adequately its claim of set-off. See Stoehr v. Wallace, 255 U.S. 239, 245, 246, 41 S.Ct. 293, 65 L.Ed. 604, and Central Trust Co. v. Garvan, 254 U.S. 554, 566–568, 41 S.Ct. 214, 215, 65 L.Ed. 403. As was said in the Garvan case, "The occasion of the duty is a demand after a determination by the President and it is hard to give much meaning to the words 'which the President after investigation shall determine is so * * * held' unless the determination and demand call the duty into being." Lavino, in disregard of that legal duty, refused to comply with the turnover directive, retaining the sum of $25,000, though Congress had created a remedy adequate for its relief in Section 9 of the Act. Lavino had the use of the money during the period of retention.

We conclude that the United States is entitled to interest from the date of service of the demand, viz., October 15, 1946, to the date of the judgment of the court below.[7] To hold otherwise would place a premium upon disobedience to the mandate of the statute and reward the recalcitrant. See the cases cited, supra, and the brief dissent of Judge Clark in the Manufacturers Trust Co. case, supra.

 We cannot agree with the contention of the Custodian that the law of Pennsylvania has any application here. We are adjudicating a federal question arising under an Act of Congress, and, in the absence of an applicable federal statute, it is for the federal court to award, according to its own criteria, appropriate damages expressed in terms of interest. Compare Royal Indemnity Co. v. United States, supra, 313 U.S. at page 296, 61 S.Ct. 995, 85 L.Ed. 1361. As the duty to transfer the property arises only on demand by the Custodian, such a demand, followed by non-compliance, constitutes the condition precedent necessary to accrual of interest on the debt for the benefit of the Custodian. But there is no statute and no acceptable legal theory which would award interest prior to the Custodian's demand. Indeed to award the Custodian interest on the sum demanded prior to the date of the turnover directive would penalize the debtor for delays by the Custodian wholly beyond the debtor's control. To impose such a burden on the debtor would not be just.

The judgment of the court below will be reversed with the direction to award interest on the sum of $25,000 from the date of service of the turnover directive, viz., October 15, 1946 to the date of judgment in the court below. Interest on the judgment when modified should of course follow the usual rule.

---

[7] Interst on the judgment is not in issue here.