CLARK, U. S. Atty. Gen., v. CONTINENTAL NAT. BANK OF LINCOLN, NEB.

Civ. No. 3–49.

United States District Court,
D. Nebraska, Lincoln Division.

Nov. 26, 1949.

326

Maxwell V. Beghtol, J. Lee Rankin, Kenneth E. Anderson, John C. Mason, and Nate C. Holman, all of Lincoln, Neb., for defendant.

DELEHANT, District Judge.

Counsel for the plaintiff will prepare for entry as of this date an order recognizing and finding the familiar change in personnel in the plaintiff's office and making appropriate substitution of the present incumbent thereof for the named plaintiff. See McGrath v. Manufacturers Trust Co., 70 S.Ct. 4.

For the rest, the facts are not in dispute, and the legal questions are not numerous. The case has been submitted to the court for final ruling and judgment upon the pleadings and certain additional or clarifying details reflected in the report of pretrial conference.

From those sources emerge the recognized facts upon which the court's ruling must depend. Those facts will now be mentioned as briefly as to the court seems appropriate.

The defendant is and at all times involved has been a national banking association with its office and place of business in Lincoln, Nebraska, and clothed with the authority to act as trustee of trusts of the character, and erected in the manner, hereinafter set out. Gustav C. Menzendorf died in Lincoln, Nebraska, on May 4, 1943 and for a substantial period prior to his death had been a resident of that city.

On May 3, 1943, therefore the day before he died, Menzendorf executed and delivered to the defendant a written instrument wherewith and whereby he transferred and delivered to the defendant as trustee four parcels of real estate and eighteen items of securities in the way of corporate shares and bonds and first mortgage notes, each secured by a lien on individually owned property. The defendant accepted the trust, and is engaged in its administration. Broad powers of sale, investment, reinvestment and management of, and collection of income from, the corpus of the trust were conferred on the trustee. In view of his

Joseph T. Votava, United States Attorney of Omaha, Neb., and James L. Brown, Assistant United States Attorney, of Lincoln, Neb., for plaintiff.

virtually immediate death, provisions of the trust instrument for the benefit of the donor during his life may be disregarded. Provision was also made for the payment of the expenses of the last illness and funeral of the donor out of the income or principal of the trust property. By a separate paragraph of the instrument the trustee was required to "try to pay the sum of $200.00" to trustor's grandson Hans Eugene von Bomsdorff, Pottsdam, Germany, on condition that if by reason of war or political conditions such payment should be rendered uncertain or improbable and such payment should not be made for two years after the trustor's death, the provision for such payment should be wholly void.

Paragraph five of the trust agreement is in the following language.[1]

"Trustee shall pay quarterly to Trustor's daughter Emmy von Bomsdorff of 05 Kohlgarten Street, 43 Tr, Leipsig Germany, if living and for as long as she may live, the income from securities numbered five to thirteen inclusive and from substituted securities. If, in the Judgment of the Trustee, war or political conditions make payments of income to Emmy uncertain or improbable, this income shall be accumulated over a period of five years and all income so accumulated for my daughter Emmy for five years, shall if not paid to Emmy, after a reasonable effort has been made to pay said income to Emmy, merge in the general income and be distributed as provided in paragraph six and seven and Trustor's daughter Emmy will have no right to or interest in the income or in the securities described in this paragraph five; securities described in this pargraph

may be sold and proceeds reinvested as provided herein for the remainder of the trust property."

The significance of the reference to paragraphs six and seven will be gathered from the following copy of paragraph six:

"One-half of the net income of the trust property, other than from the securities from which Emmy is entitled to receive the income, shall be delivered to Trustor's daughter Louise, if living, for so long as she may live and thereafter this income shall be divided equally among the children born to Louise during Trustor's lifetime, until the death of Emmy and Grace and until the youngest of the children of Louise and Grace, described in this paragraph and in paragraph seven, attain the age of 21 years; if there is at any time no one who is entitled to payments under paragraph seven, then the total income described in paragraphs six and seven shall be distributed. as provided in this paragraph number six."

And paragraph seven is the equivalent of paragraph six, with the reversal of the positions of the daughters, Grace and Louise.

Then, paragraph eight of the instrument makes provision for the time and manner of the termination of the trust and the final distribution of the corpus of the trust estate, as follows:

"When the time comes when there are no further income payments required by this agreement, the trustee is directed to assign convey and transfer all the remaining trust estate to the persons who received, or the persons who shared, in the last distribution of income and in case of death of one

---

1. The securities identified as "numbered five to thirteen inclusive" are:

| Items | Names |
| --- | --- |
| "5. 10 shares | A. T. & T. common stock |
| 6. 30 shares | General Motors |
| 7. 36 shares | Northwestern States Portland Cement Co. |
| 8. 1 Bond for $1,000 | O'Gara Coal 5% |
| 9. 3 Bonds for $100 | Iowa-Nebr. Bridge Corporation, Series G |
| 10. 1 Bond for $500 | " " " " Sinking Fund |
| 11. 2 Bonds for $1,000 | Lancaster Corporation Sinking Fund |
| 12. 6 shares common | Iowa-Nebraska Bridge Corporation |
| 13. 55 shares common | Lancaster Corporation" |

or more of such sharers of income, before the distribution of principal is completed the share of the deceased shall be given to the heirs of such deceased person or persons."

The grantor's daughter Emmy von Bomsdorff-Leibing was at all material times, and is now, a resident of Leipsig, Germany, and a German national, and therefore an alien enemy. Hans Eugene von Bomsdorff is her son.

The grantor's daughter Louise, is Louise M. Lewis, a citizen of the United States and a resident of California, who has only one child, a daughter, Jean Lewis. Jean Lewis was born during the lifetime of the grantor. His daughter Grace, is Grace Ryan, a citizen of the United States and a resident of Lincoln, Nebraska, who has only three children, Ann Margaret Ryan, Daniel James Ryan and Michael Joseph Ryan, all of whom were born during the lifetime of the grantor.

No payments of income have ever been made by the defendant to the grantor's daughter Emmy. In the judgment of the defendant, payments of income to her were uncertain and improbable from May 4, 1943 for the period of five years thereafter, due to the then existing war and political conditions. In that interval the defendant accumulated the income from securities numbered five to thirteen, both inclusive, as identified in the trust agreement and from substituted securities. The amount thus accumulated up to December 21, 1948 was $1,562.59. The net accumulations for the exact five year period beginning May 4, 1943 were and are $1,369.09. Those items are in the defendant's possession, as are also all items of income, less proper disbursements received after December 21, 1948.

On March 19, 1948 the original plaintiff, under authority of the Trading with the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 1 et seq., and Executive Orders 9193 and 9788, 50 U.S.C.A.Appendix, § 6 note (vide infra) issued Vesting Order No. 10,917, a copy of the essential language of which is set out in a footnote.[2] On March 31, 1948 the original plaintiff, by United States mail, transmitted to the defendant a demand in language set out in a

---

2. "Re: Trust under Agreement between Gustav C. Menzendorf, Trustor, and The Continental National Bank of Lincoln, Nebraska, Trustee, dated May 3, 1943 (File No. D-28-11700-G-1) Under the authority of the Trading with the Enemy Act, as amended, Executive Order 9193, as amended, and Executive Order 9788, and pursuant to law, after investigation, it is hereby found:

1. That Emmy von Bomsdorff-Leibing, whose last known address is Germany, is a resident of Germany and a national of a designated enemy country (Germany);

2. That all right, title, interest and claim of any kind or character whatsoever of the person named in subparagraph 1 hereof, in and to and arising out of or under that certain trust agreement dated May 3, 1943, by and between Gustav C. Menzendorf and The Continental National Bank of Lincoln, Nebraska, presently being administered by The Continental National Bank of Lincoln, Trustee, 1100 O Street, Lincoln, Nebraska, is property within the United States owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to, or which is evidence of ownership or control by, the aforesaid national of a designated enemy country (Germany);

and it is hereby determined:

3. That to the extent that the person named in subparagraph 1 is not within a designated enemy country, the national interest of the United States requires that such person be treated as a national of a designated enemy country (Germany).

All determinations and all action acquired by law, including appropriate consultation and certification, having been made and taken, and, it being deemed necessary in the national interest,

There is hereby vested in the Attorney General of the United States the property described above, to be held, used, administered, liquidated, sold or otherwise dealt with in the interest of and for the benefit of the United States."

footnote.[3] With the demand was transmitted a copy of the vesting order. The defendant received the demand and copy of the vesting order in due course of post; but declined to regard it as adequate to compel or justify its surrender to the plaintiff of any of the accumulated income from items five to thirteen, inclusive, and has not made any such payment.

This action followed, the complaint having been filed on January 22, 1949. In it the plaintiff prays that it be determined that he is entitled to the accumulated interest from the designated securities or their respective substitutes; that the defendant be ordered to surrender to the plaintiff such income, so far as it has accumulated, and hereafter to continue to pay such income so long as provision therefor is made by the trust instrument; and that the plaintiff have general equitable relief appropriate in the premises.

By answer, setting up its contentions (considered hereafter) and also a detailed accounting of its receipts and disbursements in respect of items numbered five to thirteen of the trust property, the defendant prays for the dismissal of the ac-

3. "In reply please refer
to file number
D–28–11700–G–1 Office of Alien Property
V.O.No.10917 Department of Justice
THC: VLP: mgt Washington 25, D. C.
Demand for Payment and Delivery of
Vested Property to the Attorney
General of the United States
 March 31, 1948
The Continental National Bank of Lincoln, Trustee 1100 O Street
Lincoln, Nebraska
 Re: Trust under agreement between
 Gustav C. Menzendorf, Trustor,
 and The Continental National
 Bank of Lincoln, Nebraska, Trustee, dated May 3, 1943.

Demand is hereby made upon you for payment and delivery to the Attorney General of the United States of the property described in the enclosed certified copy of Vesting Order No. 10917, executed on March 19, 1948, by which the Attorney General acquired all right, title, interest and claim of any kind or character whatsoever of the person therein named, in and to the above entitled Trust.

For the purpose of identifying the account on the books and records of the Office of Alien Property, an account number has been assigned as follows:
*Emmy von Bomsdorff–Leibing 28-29154*

You are hereby authorized and directed to deliver to the Office of Alien Property, Department of Justice, Washington 25, D. C., all of the property described in said Vesting Order. The checks are to be made payable to the order of the Attorney General of the United States, Account No.—, using the number assigned above.

It is requested that when you forward funds to this office you furnish us with an itemized statement, in duplicate, by dates and periods showing the gross income earned by the trust, the share of income due the designated national less the various deductions, and the net income including any accrued interest payable to the Attorney General. Please include in the statement the amount of net income accrued to date of execution of the vesting order and the amount accrued subsequent thereto. Also advise us as to the date or period when the payments are to be distributed.

On income both earned and payable prior to the date of the Vesting Order and payable to the designated national the Federal income taxes should be withheld by you and paid to the Collector of Internal Revenue for your District as provided in the applicable statutes and regulations issued pursuant thereto. As to income which becomes payable after the date of the Vesting Order no amount for the payment of income taxes should be withheld by you. Please note that even though the income was earned prior to vesting, if it was not payable before the vesting date, no tax should be withheld.

You are advised that you should continue to act in your capacity as Trustee and administer the trust in accordance with your local statutes and the requirements of the trust instrument. All accrued income payable to the designated national should be promptly remitted to this office, as well as additional payments when they become due.

Please sign the acknowledgment of receipt on the attached copy of this demand and return it in the envelope which is enclosed.
 Sincerely yours,
 For the Attorney General:
 /s/ David L. Bazelon
 Assistant Attorney General
 Director, Office of Alien Property
Enclosures"

tion and a judgment that the plaintiff is not entitled to any interest under the trust and by virtue of his vesting order and demand, or, alternatively, and only if its primary prayer be denied, for a construction of the trust instrument and a determination of what interest thereunder the plaintiff has acquired by reason of the vesting order and demand, and that its accounting be approved, and for general equitable relief.

Several legal considerations upon which there is no question may be passed over with their mere mention. More extended comment would be both superfluous and inappropriate. The jurisdiction of this court is unchallenged, and unquestionably exists. See generally Title 28 U.S. C.A. § 1345 and specifically Title 50 U.S. C.A.Appendix, § 17 and Cummings v. Deutsche Bank, etc., 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545; Markham v. Allen, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256; Clark v. Tibbetts, 2 Cir., 167 F.2d 397. The validity of the Trading with the Enemy Act, Title 50 U.S.C.A.Appendix, § 1 et seq., and of the Executive Orders 9193, 3 C.F.R. 1174 vesting the Alien Property Custodian with final and conclusive authority to take possession of the property of alien enemies, and designating Germany as an enemy country, and 9788, 1 C.F.R., 1946 Supp. 169, transferring to the Attorney General the authority and functions of the Alien Property Custodian is conceded. It is recognized also that by a vesting order of the character here employed, the entire right, title, interest and claim of the designated alien in the property affected are immediately divested and pass to the custodian. United States v. The Antoinetta, 3 Cir., 153 F.2d 138, affirming 49 F.Supp. 148, certiorari denied, 328 U.S. 863, 66 S.Ct. 1368, 90 L.Ed. 1633; rehearing denied 329 U.S. 820, 67 S.Ct. 31, 91 L.Ed. 698; Cummings v. Hardee, 70 App.D.C. 18, 102 F.2d 622, certiorari denied Hardee v. Murphy, 307 U.S. 637, 59 S.Ct. 1033, 83 L.Ed. 1518; Vahle v. Markham, D.C.Pa., 5 F.R.D. 315.

Both parties also recognize that, with respect to property legally comprehended within the definition of a valid vesting order and demand, or turn over directive, a suit of this nature brought under Title 50 U.S.C.A.Appendix, § 17, in lieu of a forcible seizure is possessory only and must be yielded to, the right of any claimant being postponed to subsequent assertion. Central Union Trust Co. of New York v. Garvan, 254 U.S. 554, 41 S.Ct. 214, 65 L.Ed. 403; Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604; Commercial Trust Co. of New Jersey v. Miller, 262 U.S. 51, 43 S.Ct. 486, 488, 67 L.Ed. 858. Thus, in the case last cited, the court said: "The suit was tantamount to physical seizure—gave preliminary custody such as seizure gives, and was intended to be not 'less immediately effective than a taking with the strong hand.'" Alluding to Central Union Trust Co. of New York v. Garvan, supra. A suit of this character is not a proper vehicle for the trial of conflicting claims of the designated enemy, on the one hand, and adverse or contingent beneficiaries, on the other. The statute itself contemplates that, upon the making of the vesting order, the title to, and possession of, the thing or interest designated therein shall pass to the executive authority, but reserves to persons, not enemies, or allies of an enemy or enemies, the right to make claims upon the property seized and to sue for recovery in respect of it; and erects competent procedure for such purposes. Title 50 U.S.C.A.Appendix, § 9. The exclusiveness of this remedy has been clearly determined. Central Union Trust Co. of New York v. Carvan, supra; Josephberg v. Markham, 2 Cir., 152 F.2d 644.

Granting generally the sweeping powers of the custodian, as they have been suggested, the defendant specifically concedes that it was within the right of the plaintiff, by means of an adequate vesting order, even aided, as the court understands the defendant's position, by an explicit demand for possession, or turn over directive, describing the thing itself, to capture the accumulated income and the right to future income from items five to thirteen of its trust. But it insists that he has failed to do that, and has, instead, vested in himself only "all right, title, interest and claim of Emmy von Bomsdorff-Leibing" in or under the trust agreement. Thus, the de-

fendant, in the language of the literature upon the subject, e.g. 62 Harvard Law Review 721, 733, 736, 737, 747 points to the distinction between a "res-vesting order" and an "order vesting the right, title, interest and claim" of a designated person in a res, aided by a subsequent "turn over directive". See also Clark v. Edmunds, D.C.Va., 73 F.Supp. 390, for a statement and discussion of the distinction.

And contending that the vesting order in this instance is of the latter character, and that the demand is no more explicit than the vesting order and does not requisition the "res", it argues (a) that in this suit it has the right, even the duty, to deny that the designated enemy has any right, title, interest or claim in, to, or upon any property or income under the trust agreement, and (b) that, in law and in fact, she has no such right, title, interest or claim. Restated, the defendant contends that while the plaintiff had the power by a vesting order to capture the income he now seeks, he has not exercised that power.

That the vesting order and the letter of demand now before the court extend only to "all right, title, interest and claim of any kind or character whatsoever of Emmy von Bomsdorff-Leibing, in and to and arising out of or under the trust agreement" is at once manifest from the language of those instruments. Neither of them in express terms describes or claims in specific words the accrued income or the right to receive income hereafter to accrue, from the assets of the trust numbered from five to thirteen, inclusive, or substitutions therefor.

It must be equally clear that if there were, under the trust agreement, no fund or income in, to, or upon which the designated enemy had, at the time of the issuance of the vesting order, any right, title, interest or claim, the vesting order and demand would have been futile and completely null. But the court is satisfied that no such situation is present.

The authorities submitted by counsel in this connection are very helpful, but hardly decisive. Certainly, they are not controllingly authoritative, for several of them are unreported opinions; some, too, are the expressions of trial courts; and none of them originate in this district or circuit or involve decisions upon the narrow questions involved by the Supreme Court of the United States or the highest court of any state.

The court is persuaded that it must not determine the plaintiff's right to the possession of the net income he demands as a mere corollary to the question whether the enemy daughter could by an appropriate suit in equity compel the defendant to surrender the fund to her, or to the other question whether, in an interpleader action or one for the construction in equity of the trust agreement, she or her sisters (under paragraphs six and seven, as provided by paragraph five of the trust agreement) would be entitled to it. The vital question seems to be whether she had any right, title, interest or claim whatsoever, in, to or upon the income accumulated or thereafter to accrue, when the plaintiff entered his vesting order.

█ The court is unable to assent to the plaintiff's argument that the vesting order in and of itself finally and conclusively determined, beyond inquiry by this court in the present case, that the income under the trust agreement provided for Emmy von Bomsdorff-Leibing is payable to her. While the court concludes that such income was, and, so far as this record extends still is, so payable, it reaches that conclusion free from any compulsion of the vesting order, or, for that matter of the demand, or turn over directive. The cases relied upon by the plaintiff in that argument do not extend to its extremity. Central Trust Co. of New York v. Garvan, supra, involved a libel to recover securities which by specific description had been found by the custodian to be enemy owned and subject to his capture. Stoehr v. Wallace, 255 U.S. 239, 41 S.Ct. 293, 65 L.Ed. 604, was an action under Title 50 U.S.C.A.Appendix, § 9 to intercept the sale and secure the return of corporate stock theretofore, by the custodian determined by exact description to have been held for a German corporation. The validity and finality of the determina-

tion and seizure were upheld. American Exchange National Bank v. Garvan, 2 Cir., 273 F. 43, reversing American Exchange National Bank v. Palmer, D.C., 256 F. 680, affirmed 260 U.S. 706, 43 S.Ct. 165, 67 L.Ed. 474, involved successive demands by the custodian for a specifically described deposit. Clark v. E. J. Lavino & Co., D.C. Pa., 72 F.Supp. 497, modified only as regards interest, 3 Cir., 175 F.2d 897, was an action under Title 50 U.S.C.A.Appendix, § 17, brought after the issuance of a vesting order describing in general terms "all property * * * payable or deliverable to or held on behalf of or on account of or owed to" a Japanese corporation, but followed by a turn over directive addressed to a supposed debtor of the corporation describing in exact figures the amount of an indebtedness, against which the debtor claimed an unliquidated set-off. The set-off was held not to be maintainable in the possessory action in such fashion as to defeat the claim of the custodian. (This case was not cited on the point by the plaintiff, but may be regarded as having some bearing upon it.) Of Clark v. Manufacturers Trust Co., 2 Cir., 169 F.2d 932, at least two distinguishing suggestions may be made. First, it was brought by the custodian following his issuance of a vesting order describing a specific bank account, and of a turn over directive naming the exact amount of the account. The existence of the account was not questioned, but the bank in wholly inadequate pleadings denied the debt and claimed the right of set-off or a lien upon the account, which the circuit court of appeals held it could not assert in the enforcement suit. Secondly, as of November 7, 1949, in McGrath v. Manufacturers Trust Co. (Manufacturers Trust Co. v. McGrath), 70 S.Ct. 4, the supreme court vacated the judgment against the bank, but for the purpose of allowing it adequately to plead and present its claims with a view to further proceedings thereon. So the circuit court case stands at this moment in an altogether uncertain plight.

Parenthetically it may be observed that in the opinion last cited the supreme court authoritatively held that interest is not to be allowed to the custodian upon a fund recovered in a suit of this character after refusal by a bank or trustee of a demand for its payment. Doing which, it inferentially overruled Clark v. E. J. Lavino Co., 3 Cir., 175 F.2d 897.

This court is disposed to think that, with the record before it, inquiry may appropriately be made whether, in reality, the enemy daughter of the donor, at the time of the vesting order, had any right, title, interest or claim of any kind or character whatsoever in and to the trust. Without unnecessary quotation or analysis the court regards as valid the essential thought of Kahn v. Garvan, D.C.N.Y., 263 F. 909; Miller v. Rouse, D.C.N.Y., 276 F. 715; Simon v. Miller, D.C.N.Y., 298 F. 520; and Clark v. Edmunds, supra. However, in view of the language of the trust instrument now under scrutiny and for reasons set out herein, a result generally different from those of the cited cases is reached in this action.

■ It would seem that in the construction of the trust agreement and the measurement of the interests thereunder of the beneficiaries, Nebraska's law must govern. The trust was erected here by a resident of Nebraska in favor of a Nebraska corporate trustee, and its administration here was contemplated. It need hardly be added that the essential test upon the point is the donor's intent so far as it may be ascertained and is consistent with law. The plaintiff contends that under the trust agreement the enemy daughter took a vested title to the income involved subject to defeasance upon condition subsequent. The defendant's position is that such interest as was bestowed upon her was contingent only, that is to say depended upon a condition precedent, the events pertinent to which had finally and completely defeated her right or claim before the date of the vesting order. The court regards the plaintiff's view as correct.

■ The distinction between a vested interest subject to defeasance upon the happening of a condition subsequent, on the one hand, and on the other, a conditional interest is not always easy to make upon

litigated facts. But the rational difference between the two types of conveyance or gift is subject to reasonably clear statement. If the language employed discloses that the condition upon which an estate depends must happen before the estate comes into existence, the condition is precedent, and unless it occur, the assumed beneficiary, his interest being contingent on the happening of the condition, takes nothing. However, if the prescribed condition does not necessarily precede the vesting of the estate but may concur with or follow it, the condition is subsequent, and until, and subject to, its occurrence the estate, once attaching, persists. The Supreme Court of Nebraska in Wilkins v. Rowan, 107 Neb. 180, 185 N.W. 437, 440, quoting with approval from Thompson on Wills, Section 258, said, "There is a class of gifts occupying an intermediate position between absolute gifts and contingent gifts which vest in the beneficiary subject to being divested by the happening of a contingency or the exercise of a power. Until the contingency happens or the power is exercised this gift has all the incidents of an indefeasible interest. If the contingency never happens or the power is never exercised, the gift becomes absolute." Those general considerations are to be kept in view in the appraisal, in the relation now involved, of the interests created under any grant, whether testamentary, or by deed, or through deed of trust.

Some slight significance may well exist in the distinction between the technique by which the donor made a modest provision for his German grandson in paragraph four of the trust instrument, and the provision for the donor's German daughter. In the former the trustee was directed "to try to pay the sum" to the grandson but "on condition however that if delivery of this legacy (sic) is by political or war conditions rendered uncertain or improbable, transfer of this sum may be delayed two years, and if payment is not completed within two years of my death, this order to pay to my grandson will become of no force, and as though it was never made" etc. In the succeeding paragraph of the same agreement, however, the trustee was mandatorily directed to pay to the German daughter, "if living and so long as she may live" the income in question; and that direction was followed by the language on which the defendant relies and of which discussion will shortly be offered. The grandson was given nothing at all unless its delivery was completed within two years. The provision respecting the daughter was quite different.

The court does not regard favorably the plaintiff's argument that the conditional provisions of paragraph five are the less significant because they follow in separate sentences the otherwise unconditioned directions of the first sentence of the paragraph. It is true that a gift or grant unconditionally bestowed in a written instrument will not be nullified or minimized by subsequent language of the instrument. Yet, in Nebraska, that rule must be applied in full view of the paramount rule that the true intent of the parties to a written instrument is to be gathered from its entire language rather than from a consideration of one or more of its several parts in detachment from the rest of its provisions, and without too strict dependence upon the order or sequence of the provisions in the instrument. Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81; Teske v. Dittburner, 83 Neb. 701, 120 N.W. 198; Wilson, v. Perry, 110 Neb. 535, 194 N.W. 455; Baylor v. Hall, 106 Neb. 786, 184 N.W. 886; Tobin Quarries v. Central Neb. P. P. & I. D., D.C.Neb., 64 F.Supp. 200, affirmed 8 Cir., 157 F.2d 482. Within that rule language of an instrument inoperative to impair or nullify a grant theretofore absolutely made in it must be considered, in order to determine whether what, without it, might constitute an absolute grant was intended to be conditioned or minimized in a manner or to an extent allowable by law. Reuter v. Reuter, 116 Neb. 428, 218 N.W. 86. The same rule is applied in the construction of testamentary grants. Graff v. Graff, 136 Neb. 543, 286 N.W. 788; Martens v. Sachs, 138 Neb. 678, 294 N.W. 426, 134 A.L.R. 356. And the testamentary character of the beneficial provisions of the instant trust agreement, as dis-

334

tinguished from its practical machinery, is. obvious.

 In Nebraska a valid construction favorable to the creation of a vested interest or title will be favored over one resulting in a contingent grant. Davis v. Davis, 107 Neb. 70, 185 N.W. 442; Wilkins v. Rowan, 107 Neb. 180, 185 N.W. 437; In re Estate of Stieber, 139 Neb. 36, 296 N.W. 336; Goodrich v. Bonham, 142 Neb. 489, 6 N.W.2d 788. That rule, frequently applied in Nebraska, is generally recognized in other jurisdictions. 65 C.J. 499, Title Trusts, section 244. And it is operative as to interests in personalty as well as in real estate, 31 C.J.S., Estates, § 138, p. 166.

 Examining the fifth paragraph of the trust instrument, certain features of it clearly appear. The trustee is first directed to pay quarterly to Emmy von Bomsdorff-Leibing, if living and for as long as she may live, the income from the securities identified. She was and is living. But the war of 1939–1945 was in progress when the instrument was executed. The United States and Germany were hostile powers. The donor knew that, and was aware in some measure of the problems involved in, and then intercepting, the exportation of money from persons in the United States to those in Germany. He did not know how long that situation would continue or what additional complications might arise, or how long he would live; and his contract created no right in any one except himself whose enjoyment should commence until his death. In view of the then existing hostilities and the uncertainty of their duration, he provided further that if in the defendant's judgment, war and political conditions should make the payment to his daughter Emmy of the installments of income provided for, uncertain or improbable, such income should be accumulated over the period of five years. . He did not unconditionally order an alternative disposition of that accumulated income at the end of such five years. On the contrary, he was determined, and he provided, that, even then, "a reasonable effort" should be "made

to pay said income to Emmy". And only after the five years' period of accumulation and after a reasonable effort had been made to pay said income to Emmy did he provide that such accumulated income should "merge in the general income and be distributed as provided in paragraphs six and seven and Trustor's daughter Emmy will have no right to or interest in the income or in the securities described in this paragraph five".

Clearly, under the paragraph, Emmy von Bomsdorff-Leibing was given (the direction to the trustee to pay is the equivalent of a gift in the absence of language of contrary import) the net income from the designated securities during her lifetime, subject only to her father's right to them so long as he should survive. But the gift, as well as its enjoyment, was made subject to defeasance upon the conditions set forth in the paragraph which might or might not mature.

The defendant trustee does not claim that it ever made any effort to pay or transfer any of the income to Mrs. von Bomsdorff-Leibing. The court, in default of pleading and proof of such effort, properly assumes that none was made; and the defendant's brief proceeds on that assumption. As much as may be found on that point is that in its judgment payments to her were uncertain and improbable from May 4, 1943 until the making of the vesting order and thereafter until May 4, 1948, and that during that period the defendant accumulated the income which is in its possession, unpaid to anyone.

Now, when the vesting order was made on March 19, 1948, the alien enemy identified therein was possessed of the right, under the trust agreement, to receive the then accumulated net income from the designated securities. She was actually the only person who then had such right, or any right, title, interest or claim in, to or upon the income. The defendant then had no right to pay it or any part of it to any other person. And even at the end of the five year period, some weeks after the date of the vesting order, if the vesting order had not been entered, she would still have

been entitled to the accumulated income until the defendant had prosecuted, for an unstated period of time, a reasonable effort to pay it to her. It ought to be noted that while the trustee's judgment that payments to Emmy were uncertain or improbable was its sufficient justification for accumulating the income for five years, it was not made the single sufficient ground for denying her thereafter that accumulated income. A reasonable effort to make payment was required, although, perhaps, dispensation from such effort might be made in the face of manifest impossibility of its success.[4] And she had the right to receive subsequently accruing income, at least until the making of the reasonable effort to pay, and, on its failure, the disposition of the accumulated income in furtherance of the alternative plan. The court believes, therefore, that, as of the date of the vesting order she had a "right, title, interest, and claim", in, to, and upon the income from the several items of the trust, whether accrued, or thereafter to accrue, namely the right to receive in cash all accumulated income and such as should thereafter arise. And it is further considered that the vesting order was adequate to reach and sequester, subject to adverse claims thereafter to be prosecuted within the machinery provided in Title 50 U.S.C.A.Appendix, § 9, the accumulated income and the items of income to accrue thereafter so long as she should live.

Clark v. Edmunds, supra, is cited in its support by the defendant. In that case a holographic will was involved in which a woman had made the following provision [73 F.Supp. 391], "I also want my husband's family in Bremen, Germany, the Stellohs and the Kleintitschens, to share in my estate (should they survive this war) to the extent of $20,000." The court held that the parenthetical phrase "should they survive this war" imposed a condition precedent upon the bequest to any of the generally designated group, and that only those of the group who should survive the war were given anything. The decision was made before the end of the war in a legal sense,[5] and at a time when it could not be determined whether any of the group would survive the war. Considering that the record disclosed the existence of no one in whom any vested right, title, interest or claim could legally be found to exist, Judge Barksdale denied the custodian's motion for a summary judgment. It may be noted in passing that his order in its nature was not final or appealable. In his opinion he observed, too, that:

"* * * it would seem that if, under the terms of the bequest here in controversy, the German legatees took presently vested interests, payment only being deferred, plaintiff's motion should be granted and the fund should be paid over to him."

The quoted language, of course, may not logically be extended so as necessarily to be authority for a like conclusion where, as here, a provision for the payment of the fund to others than the designated beneficiary is added to the language authorizing deferment of payments to the primary beneficiary. And this court understands Application of Miller, 2 Cir., 288 F. 760; and In re Reiner's Estate, Sur., 44 N.Y.S.2d 282, among the opinions cited by Judge Barksdale, to be cases in each of which the granting language involved provided only for deferment of payment, not the consequent bestowal of the fund on an alternative recipient.

In re Irving Trust Co., 185 Misc. 866, 57 N.Y.S.2d 745 and In re Thramm's Estate, 80 Cal.App.2d 756, 183 P.2d 97, are opinions also tending to support the defendant's position. However, they are distinguishable

---

4. The court's attention is directed by the plaintiff to the fact that, since December 31, 1946 no legal barrier has existed to the transmittal of money to persons in Germany lawfully entitled to receive it, and that this fact is true even in respect of persons in the Russian zone of which Leipsig is a part, remittances to whom must, however, be made through the proper channels of the Soviet Union. The court may not consider as a fact in this case that money free from restraint by the custodian could not actually have been transmitted from within the United States to Mrs. von Bomsdorff–Leibing since December 31, 1946.

5. It is still unended.

in their facts from the instant case. A will was involved in the Irving Trust case which, in respect of legacies otherwise bequeathed to German nationals resident in Germany, provided that in the event that *at the testator's death* there was in effect a law prohibiting the transfers of legacies and distributive shares to Germany from American estates, the legacies to persons resident in Germany should be deemed revoked and void, and in that contingency made alternative disposition of the legacies. At the time of the testator's death such a law was in effect. Therefore, no legacy whatsoever was, by the will, bequeathed to a German national living in his own country. In the Thramm case the discussion of the pertinent issue might be treated as dictum, because a feature of California's inheritance law was adequate ground for the decision reached; but the consideration of the instant question, so far as it occurred, was mature and studied and is entitled to due attention. There, in a holographic will legacies were bequeathed to two residents and citizens of Germany. In a further paragraph the testatrix provided, "A year after my death my estate should be settled. If it is impossible to do so with Germany, then everything should go to my brothers Otto & Fred Tilsner and their children". Otto and Fred were also made residuary legatees. The testatrix died June 7, 1943. Manifestly, payment of money to anyone in Germany was utterly impossible for much longer than a year thereafter. No vesting order was made until May 24, 1945 (10 F.R. 6471) on which date also a copy of it was filed in the probate case. Meanwhile the final report of the executor and petition for final settlement had been filed and the date for hearing therein fixed. It will at once be apparent that, long before the entry of the vesting order, the period of one year after the death of the testatrix had elapsed with the war in active prosecution and the impossibility of making payments to persons in Germany absolute; whereby all right of the German legatees to take had effectively and finally lapsed. So, these two cases are not logically instructive here.

The plaintiff cites and relies upon the apparently unreported cases of In re Executor, Estate of Wolfinger (1948) Surrogate's Court, Erie County, New York; Estate of Engelmohr (1945) Orphan's Court, Montgomery County, Pennsylvania (one of the cases cited in Clark v. Edmunds, supra); and In re Estate of Weigelt, 95 Pittsb. Leg. J. 181 (1946) Orphan's Court, Philadelphia County, Pennsylvania. Each of them in circumstances essentially similar to those here present sustained the claim to possession of the custodian. This court has examined the opinions in the cases, which are not exhaustive in their analyses. Besides, being unreported they can hardly be said to be compelling as judicial precedent.

Interesting and instructive in principle, although not precisely in point, are Markham v. Tibbetts, D.C.N.Y., 79 F.Supp. 47, modified Clark v. Tibbetts, D.C.N.Y., 79 F.Supp. 60, and Koehler v. Clark, 9 Cir., 170 F.2d 779. Neither was an action under Title 50 U.S.C.A.Appendix, § 17. The former was an action by the custodian for a declaratory judgment; the latter a suit by claimants under Title 50 U.S.C.A.Appendix, § 9. But the court's discussion in each instance is instructive in reference to the custodian's power and the reach of a "right, title, interest and claim" vesting order.

While the reported opinions cited by counsel and carefully examined and considered are instructive upon the applicable general principles, they necessarily allow the solution of each case to depend upon its own facts, in this case chiefly upon the trust instrument, the retention of income and the fact and time of the vesting order and of the demand. In the persuasion that Mrs. von Bomsdorff-Leibing at the time of the vesting order had, and so far as the present record extends, still has, a very real right, title, interest and claim to the income from the trust property mentioned in paragraph five of the trust instrument, and that such right, title, interest and claim extend to the receipt, possession and use of the income itself, the plaintiff's prayer is granted.

The conclusion announced is consonant with the frequently declared purposes of the Trading with the Enemy Act, as amended. That act is designed for a twofold purpose in recognition of the impact of economic considerations upon modern warfare. One of those purposes is to prevent property within the United States of an alien enemy country or national from being appropriated by the enemy and utilized in attack upon the United States. The other is to capture such property and employ it for our own defense and support. Efforts in that direction should not be narrowly appraised or administered. To absolve the income presently sought by the plaintiff from liability to his demand would be to allow its payment even yet to the enemy daughter and its conceivable use against the United States, if not in military operations, at least in the economic phases of the post war relations between the two nations.

At the same time if others than Mrs. von Bomsdorff-Leibing have valid claims upon the fund, whether now accrued or hereafter to accrue, paramount to those which she held at the time of seizure, or in default of seizure, would now hold, those claims are not impaired by the plaintiff's custody of the fund. As against them his possession involves no denial or ousting of right or title except that of Mrs. von Bomsdorff-Leibing.

The present ruling is, in nowise, prompted by an argument offered by the plaintiff that it will, in the long view, result to the personal advantage of Mrs. von Bomsdorff-Leibing. He supports that position by the benevolence which characterized our dealings upon the same subject after the war of 1914–1918. The court has no right to assume that identical or even similar indulgence will again be exhibited. The present posture of legislation on the subject would suggest the contrary probability. But, in any event, such suppositions are beyond the proper reach of judicial reasoning in the present situation.

The judgment of the court is that the plaintiff is entitled to the right, title, interest and claim of Emmy von Bomsdorff-Leibing under the trust instrument, includ-

ing the net income from securities numbered five to thirteen, or substitutes therefor; that the defendant be ordered and directed to transfer and pay over to the plaintiff all net income from such securities which has accrued and the quarterly installments of which have become payable up to this date, and from time to time to pay over to the plaintiff the quarterly installments of such income hereafter to accrue so long as Emmy von Bomsdorff-Leibing shall live, all subject however to the rights, title, interests and claims, if any, of adverse nonenemy claimants, if any, and to their appropriate assertion under Title 50 U.S.C.A.Appendix, § 9. Costs are taxed to the defendant; and, as between the plaintiff and the defendant only, the defendant's accounting made with its answer is approved.

Formal judgment will be prepared by counsel for the plaintiff and submitted to counsel for the defendant for approval as to form, and if so approved then to the court for signature and entry; but if not approved then, upon notice, to the court for settlement, signature and entry.